STATE OF NORTH CAROLINA v. ROGER DALE DIXON

No. COA01-503

(Filed 7 May 2002)

**Evidence— psychologist—testimony that abuse occurred**

The trial court erred in a prosecution for first-degree statutory sexual offense by permitting a clinical psychologist to testify to his opinion that the victim had been sexually abused. Although the witness's testimony about the various psychological tests, interviews, and reports upon which he relied may have been a sufficient foundation to support an opinion that the victim did or did not exhibit symptoms or characteristics of victims of child sexual abuse, it was not a sufficient foundation for the admission of his opinion that she had in fact been sexually abused. There is a reasonable possibility that a different result would have been reached without the testimony because there was no evidence of sexual abuse other than the victim's testimony and her credibility was critical.

Judge CAMPBELL dissenting.

Appeal by defendant from judgment entered 3 November 2000 by Judge Kimberly S. Taylor in Iredell County Superior Court. Heard in the Court of Appeals 14 February 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Sue Y. Little, for the State.*

*Patricia L. Riddick for defendant-appellant.*

MARTIN, Judge.

Defendant was charged in a true bill of indictment with first degree statutory sexual offense against his six-year-old step-daughter (hereinafter "S.E."), in violation of G.S. § 14-27.4(a)(1). A jury found defendant guilty as charged. Defendant appeals from the judgment entered upon the verdict.

The State's evidence tended to show that the alleged incident giving rise to this action occurred on an evening between Halloween and Thanksgiving in 1998 when S.E. was in the first grade. On the evening in question, defendant was taking care of S.E. and her younger brother while S.E.'s mother, Martha Dixon, was at work. S.E. testified that while she and defendant were in the living room watching television, defendant told her to sit on his lap and that defendant inserted his finger into her "private part." When S.E. told defendant that it hurt, defendant responded that he was sorry. S.E. then got up and sat on the floor, where she and defendant played cards. S.E. testified that she and defendant later took a bath together and that they went to the bedroom and lay beside each other on the bed and that defendant licked her private part. S.E. testified that she told her mother about the incident on the following day, but that her mother did not believe her.

In December 1998, while S.E. was taking a bath at her grandparents' house, she told her aunt, Victoria Fox, that her "bottom" was hurting. Victoria asked her whether anyone "had touched it," and S.E. responded that defendant had "put his finger down there" and "wiggled it" while she was sitting in defendant's lap. After getting permission from S.E.'s mother, Victoria took S.E. to be examined by Dr. Willhide in Statesville, North Carolina.

Georgina Moose, a guidance counselor at Scotts Elementary School, testified that, in the spring of 2000, S.E. told her that defendant had sexually abused her. Moose stated that S.E. told her that defendant had placed her on his lap and had touched her private part.

Cynthia McCoy, a Child Protective Services Investigator for the Iredell County Department of Social Services investigated the matter

after receiving a report on 15 December 1998 alleging sexual abuse. McCoy spoke to S.E. at her grandparents' home. S.E. told McCoy that she had gone to the doctor that day and that he checked her "bottom." When McCoy asked what she meant by her "bottom," S.E. pointed to her vaginal area. S.E. told McCoy that the doctor checked her bottom because it was hurting since her daddy put his finger in her private part. McCoy asked S.E. if defendant had done anything else to her while he had his finger in her private part and she responded that he kissed her. McCoy also testified that S.E. informed her that defendant had put his mouth on her private part.

Dr. Sarah Sinal, who was the head of the child abuse team at Baptist Hospital, was qualified as an expert witness in pediatrics and child sexual abuse. She performed a child medical examination on S.E. on 1 February 1999. Dr. Sinal noted some redness in S.E.'s genital area but testified that the irritation could be there for a variety of reasons. Dr. Sinal stated that she did not see any definite discharge. Dr. Sinal further indicated that S.E.'s hymen seemed delicate and not worn away. Cultures for sexually transmitted diseases were negative. According to Dr. Sinal, except for the irritation in S.E.'s genital area, S.E.'s exam was normal. Additionally, she explained that because the tissue in the female genital area is very stretchable, digital penetration is not likely to leave damage or permanent physical findings.

Cynthia Stewart, a social worker at North Carolina Baptist Hospital, was qualified as an expert in child sexual abuse. Her responsibilities at Baptist Hospital included initially interviewing the families when they arrived at the clinic. Stewart interviewed S.E. at the clinic on 1 February 1999. During the interview, S.E. told Stewart that her dad had touched her private part where he was not supposed to touch. S.E. told Stewart that she had been sitting on defendant's lap watching television when he put his finger there. When S.E. was asked what her father said, she responded, "[s]orry." When Stewart asked S.E. what happened to her and defendant's clothes while she was sitting on defendant's lap, S.E. stated that their clothes were thrown on the floor. S.E. pointed to the vaginal area of an anatomically correct doll to show where defendant had touched her. When Stewart asked S.E. whether the touching of her private part was outside or inside, S.E. said, "[i]nside." S.E. also indicated through words and an anatomically correct doll that defendant had touched her inside her anus. S.E. further told Stewart that defendant had licked her private part.

S.E. indicated to Stewart that she had seen defendant's private part. Stewart asked S.E. what defendant was doing when she saw his private part and S.E. responded, "I can't remember. I didn't want to see it. He was playing with it." S.E. told Stewart that she had seen something come out of defendant's private part and go into the commode. Stewart asked S.E. where defendant would be when he was playing with his private part, and S.E. responded that he would be sitting in his favorite chair and that he would tell her to go to bed afterward "real angry like."

Judy Herman, an Iredell County Sheriff's Deputy, was assigned to investigate the incident after the Department of Social Services brought the matter to her attention. On 18 December 1998, Herman interviewed S.E. at her office. S.E. told Herman that the incident between her and defendant had occurred between Halloween and Thanksgiving while her mother was working at Lowe's. S.E. told Herman that she was sitting on defendant's lap while they were watching television and that she was not wearing any clothes at the time. S.E. told Herman that she hugged defendant, and ["h]e used his left hand" and "[i]t hurt."

Dr. James A. Powell, a clinical psychologist, was qualified as an expert witness in the field of child sexual abuse and child psychology. Dr. Powell performed a child mental health psychological examination (CMHEP) on S.E. at the request of the Department of Social Services. Dr. Powell reviewed reports from Dr. Sinal and according to him, used them to develop his opinion as to whether S.E. had been abused. Dr. Powell also performed psychological tests on S.E., Martha Dixon, and defendant. Defendant was given a thematic apperception test (T.A.T.); S.E. was given a Michigan pictures test (M.P.T.) and an incomplete sentences test; and Martha Dixon was given a Minnesota multiphasic personality inventory (M.M.P.I.). According to Dr. Powell, defendant's T.A.T. showed the following:

> There were a number of indications of conflicts in male and female relationships. The themes concerned sadness, people who were concerned and troubled, people being arrested because of his excessive drinking. There were suggestions in several stories of positive family interactions, but those appeared somewhat forced and slightly artificial. There were no indications of a preoccupation with young females.

Dr. Powell testified that it is possible for a person who does not have a preoccupation with young females to still molest one. Dr. Powell

explained that this could occur because an individual could molest a young female for a variety of reasons, such as revenge, opportunity, impairment, or trauma. Dr. Powell stated that S.E.'s test results indicated that S.E. had a very positive perception of her grandparents, that she did not feel afraid of the father figures in the stories, but that she did generate several stories that had strong themes of sadness. Dr. Powell said that S.E. did not appear to be clinically depressed. Dr. Powell also found that S.E. did not have any significant distress in her household, felt loved, liked attention, and had normal views and concerns. Dr. Powell concluded that the test results for Mrs. Dixon were not interpretable.

Dr. Powell was permitted to testify that he had an opinion that S.E. had been sexually abused. He based his opinion on interviews with S.E., her grandparents, her aunt, her mother, defendant, reports from Dr. Sinal, the use of the anatomically correct dolls, and the psychological test results. Dr. Powell acknowledged that children can be coached to give responses but testified that the manner in which S.E. presented her story indicated that she was not coached to do so, and that it was stretching the bounds of credulity to say that a seven-year-old could remember in such great detail what had occurred if she were simply being told what to say. Dr. Powell further testified that the sequence of events that S.E. described to him was consistent with the typical approach that most perpetrators of sexual abuse follow in order to gain access to the child and to abuse the child.

On cross-examination, Dr. Powell acknowledged that S.E.'s grandfather told him that S.E. had a vivid imagination, but that the grandparents did not think that S.E. created the story and believed that it had happened because S.E. said it had. In response to further cross-examination, Dr. Powell testified that all the information that he had compiled indicated that defendant was the perpetrator of the abuse.

Defendant testified in his own behalf. He testified that during the time period when the incident was alleged to have occurred, S.E.'s mother worked at night and that his responsibilities in the evenings included fixing supper, feeding his son baby food or a bottle, making sure S.E. got her bath, and putting her to bed. According to defendant, there were several instances in which S.E., who was capable of bathing and drying herself, would come out of the bathroom with a towel and demand that defendant dry her off. Defendant stated that he would tell her to go back into the bathroom and dry herself

off and get dressed. Defendant told S.E.'s mother, who talked with S.E. about her behavior, and the behavior stopped for a while. Defendant denied that there was ever an occasion when S.E. might have seen his penis.

Defendant testified that he did not have a very good relationship with Martha Dixon's sister, Victoria Fox. Defendant recalled an incident prior to his marriage to Martha Dixon in which Victoria Fox told defendant that he was not going to marry her sister, and even if he did, she would see to it that he would not stay married to her.

Martha Dixon testified that when Victoria told her about S.E.'s allegations, she did not believe that defendant was capable of this kind of behavior. She testified that, prior to S.E.'s allegations, defendant and S.E. had a normal father-daughter relationship and she never saw anything that caused her concern about defendant being alone with S.E.

I.

Defendant contends the trial court erred by permitting Dr. Powell to testify as to his opinion that S.E. had been sexually abused. The assignment of error arises out of the following direct examination of Dr. Powell by the prosecutor:

Q. And did you form an opinion as to whether or not [SE] had been sexually abused?

MR. DARTY: Objection.

. . .

THE COURT: Overruled.

A. Yes, ma'am, I did.

Q. And what was your opinion?

A. My opinion was that she was sexually abused.

Q. And could you tell the jury some of the factors that led you to believe that [SE] was sexually abused.

A. It was both the test and the interview data. She gave very explicit details, which would be highly unusual for a seven year old to be aware of. There were the interactions that she demonstrated with the anatomically correct dolls. The sequence of events that she talked about and how it had occurred. The state-

ments that she had made all were consistent with a child who had been sexually abused and strongly indicated that sexual abuse had occurred.

Defendant contends the foregoing testimony amounts to an impermissible expert opinion as to S.E.'s credibility. His argument has merit.

G.S. § 8C-1, Rule 702(a) states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

Expert opinion testimony is not admissible to establish the credibility of the victim as a witness. *State v. Kim*, 318 N.C. 614, 350 S.E.2d 347 (1986).

"However, those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness." *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988). With respect to expert testimony in child sexual abuse prosecutions, our Supreme Court has approved, upon a proper foundation, the admission of expert testimony with respect to the characteristics of sexually abused children and whether the particular complainant has symptoms consistent with those characteristics. *State v. Stancil*, 355 N.C. 266, 559 S.E.2d 788 (2002); *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987). "The fact that this evidence may support the credibility of the victim does not alone render it inadmissible." *Kennedy*, 320 N.C. at 32, 357 S.E.2d at 367.

Moreover, an expert medical witness may render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred if the State establishes a proper foundation, i.e. physical evidence consistent with sexual abuse. *Stancil, supra*. However, in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility. *Id.; State v. Grover*, 142 N.C. App. 411, 418-19, 543 S.E.2d 179, 183-84 , *affirmed*, 354 N.C. 354, 553 S.E.2d 679 (2001) (Expert opinion testimony that a child has been sexually abused based *solely* on the child's statements

lacks a proper foundation where there is no physical evidence of abuse); *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 89-90, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997) (Where there was no clinical evidence to support a diagnosis of sexual abuse, experts' opinions that sexual abuse had occurred merely attested to truthfulness of the child witness and were inadmissible).

In the present case, there was no physical evidence to support a diagnosis that S.E. had been sexually abused. Dr. Sinal, who was qualified as an expert witness in pediatrics and child sexual abuse, examined S.E. and testified that her genital examination was normal except for some "nonspecific irritation" which could have been present for a variety of reasons.

Although there were no physical findings to support a diagnosis of sexual abuse, the psychologist, Dr. Powell, was permitted to state his opinion that S.E. had been sexually abused. The opinion was not supported by an adequate foundation and its admission was error. Though Dr. Powell's testimony with respect to the various psychological tests, interviews, and reports upon which he relied may have been a sufficient foundation to support an opinion that S.E. did or did not exhibit symptoms or characteristics of victims of child sexual abuse, it was not a sufficient foundation for the admission of his opinion, under Rule 702, that S.E. had *in fact* been sexually abused.

Error is prejudicial when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a). The burden is upon the defendant to show prejudice. *Id.* This Court has held that it is fundamental to a fair trial that a witness's credibility be determined by a jury, that expert opinion on the credibility of a witness is inadmissible, and that the admission of such testimony is prejudicial when the State's case depends largely on the testimony of the prosecuting witness. *State v. Hannon*, 118 N.C. App. 448, 455 S.E.2d 494 (1995).

In the present case, there was no evidence of sexual abuse other than S.E.'s testimony. There was no evidence that S.E. exhibited any physical manifestations of anxiety after the alleged incident, or that she demonstrated any emotion when she revealed the alleged abuse to her aunt, her guidance counselor, or others. Thus, S.E.'s credibility was of critical importance to the outcome of the case. Under these circumstances, there is a reasonable possibility that Dr. Powell's opinion testimony that S.E. had in fact been abused had great influence

upon the jury's determination of credibility and, consequently, there is a reasonable possibility that a different result would have been reached had his opinion that S.E. had been sexually abused been excluded. Accordingly, we are constrained to grant defendant a new trial. Because defendant's remaining assignments of error may not arise upon retrial, we need not address them.

New trial.

Judge HUDSON concurs.

Judge CAMPBELL dissents.

CAMPBELL, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the State failed to lay an adequate foundation for the admission of Dr. Powell's expert opinion that S.E. had in fact been sexually abused under N.C.G.S. § 8C-1, Rule 702.

The majority interprets the Supreme Court's recent decision in *State v. Stancil*, 355 N.C. 266, 559 S.E.2d 788 (2002) as prohibiting expert opinion testimony that a child victim has been sexually abused unless there is *physical* evidence to support a diagnosis of sexual abuse. To further support this proposition, the majority cites this Court's opinions in *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179, *affirmed*, 354 N.C. 354, 553 S.E.2d 679 (2001), and *State v. Dick*, 126 N.C. App. 312, 485 S.E.2d 88, *disc. review denied*, 346 N.C. 551, 488 S.E.2d 813 (1997). I disagree with the majority's interpretation of *Stancil*, *Grover*, and *Dick*. In my view, the bright line rule now adopted by the majority, i.e., that expert opinion testimony that a child victim has been sexually abused is *only* admissible under Rule 702 when there is *physical* evidence to support a diagnosis of sexual abuse, is not mandated by *Stancil*, *Grover*, and *Dick*, and is not an appropriate extension of the law on this subject as set forth by our Supreme Court in *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987), and as applied by this Court in numerous cases since *Trent*.

In *Trent*, the Supreme Court set forth the following inquiry for determining whether expert medical opinion is admissible under Rule 702:

"[I]n determining whether expert medical opinion is to be admitted into evidence the inquiry should be . . . whether the opinion

expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact."

*Trent*, 320 S.E.2d at 614, 359 S.E.2d at 465 (quoting *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978)). Applying this test to the record before it, the Court in *Trent* held that the State had failed to lay a sufficient foundation for the admission of an expert diagnosis that the child victim had been sexually abused. The expert in *Trent*—a physician with a specialty in pediatrics—repeatedly testified that his diagnosis was based upon the results of a pelvic exam, which was administered four years after the date of the alleged sexual abuse and standing alone would not support a diagnosis of sexual abuse, and the victim's statements to him concerning the alleged sexual abuse. He cited no other basis for his diagnosis. Given the limited basis for the diagnosis, the Court held that the State had failed to lay a sufficient foundation for the admission of the expert testimony, since there was nothing in the record to support a conclusion that the expert was in a better position than the jury to determine whether the victim had been sexually abused. *Id.* The Court in *Trent* did not adopt a bright line rule that absent *physical* evidence expert opinion testimony that there has been child sexual abuse is *always* inadmissible.

In the instant case, Dr. Powell testified that his opinion that S.E. had been sexually abused was based on his interviews with S.E., her grandparents, her aunt, her mother, and defendant, the reports from Dr. Sinal's physical examination of S.E., S.E.'s use of anatomically correct dolls to illustrate the alleged sexual abuse, and the results of psychological tests conducted on both S.E. and defendant. While the majority focuses on the fact that there was no *physical* evidence to support a diagnosis of sexual abuse, the physical examination by Dr. Sinal was only incidental to, and not the primary basis for, Dr. Powell's conclusion. Further, Dr. Powell testified that Dr. Sinal's findings of no physical signs of penetration were not inconsistent with his own opinion that S.E. had been sexually abused. Dr. Sinal testified, and Dr. Powell agreed, that the alleged acts of abuse in the instant case—digital penetration and cunnilingus—are not likely to leave damage or permanent physical evidence. In addition, Dr. Sinal testified that studies show as few as sixteen percent (16%) of cases of sexual abuse actually result in physical evidence sufficient to support a definite diagnosis of sexual abuse. Thus, in cases like the instant one,

where there is expert testimony that the alleged acts of sexual abuse are not likely to leave physical evidence, the majority sets forth a rule that would totally prevent the use of expert opinion testimony that the victim had been sexually abused. I do not read Rule 702 or *Stancil* as setting up such an absolute prohibition.

In my view, the basis for Dr. Powell's opinion in the instant case was much stronger than the basis for the opinions found to be inadmissible in *Grover* and *Stancil*, and was sufficient to allow the trial judge, as the gatekeeper for scientific evidence, to properly allow Dr. Powell's opinion to be admitted into evidence. In *Grover*, the opinions found to be inadmissible were based solely on the statements provided by the victims. In *Stancil*, the opinion was based on two physical examinations which were normal and a review of one interview with the child by a psychologist. Here, Dr. Powell conducted a series of interviews with all of the individuals involved. He also reviewed the reports of Dr. Sinal's physical examination, and administered psychological tests on both S.E. and defendant. Having been admitted as an expert in the field of child sexual abuse and child psychology, Dr. Powell was in a better position than the jury to understand the significance of his findings and to give an opinion as to whether S.E. had in fact been sexually abused. Therefore, I conclude that the trial court did not err in allowing Dr. Powell's testimony under Rule 702.

Having reviewed defendant's remaining assignments of error, I conclude that they lack merit. Therefore, I would find no error in defendant's trial.