STATE OF NORTH CAROLINA v. JAMES PATRICK TREADWAY,
DEFENDANT

No. COA10-287

(Filed 7 December 2010)

## 1. Evidence— account of victim's statements—no hearsay purpose—initiation of investigation

There was no plain error in a prosecution for first-degree sexual offense against a five-year-old child in the admission of a step-grandmother's testimony relating the things the child had said that defendant had done. The testimony was offered for the non-hearsay purpose of explaining the grandmother's subsequent actions and why investigative action was originally taken. Additionally, these prior statements served to corroborate the victim's trial testimony.

## 2. Evidence— accounts of victim's statements—corroboration—beyond trial testimony

Admitting the testimony of a step-grandmother relating statements made by a five-year-old sexual abuse victim about what was done to her was not plain error where the prior statements served to corroborate the child's trial testimony. Prior statements that went beyond the child's trial testimony affected only the weight of the evidence.

## 3. Evidence— hearsay—elicited on cross-examination

There was no plain error in a prosecution for first-degree sexual offense against a five-year-old child in the admission of testimony from a child mental health expert that defendant's son from a previous marriage had said that he had seen defendant on top of the victim at night doing "sex things." Defendant elicited the testimony on cross-examination.

## 4. Evidence— expert testimony—opinion of child's credibility

There was no plain error in a prosecution for first-degree sexual offense against a child where an expert clinical social worker testified without objection that she had diagnosed the victim as being sexually abused. The testimony amounted to an improper opinion about the victim's credibility since there was no physical evidence of abuse; however, it was not plain error

**STATE v. TREADWAY**

[208 N.C. App. 286 (2010)]

because the testimony was followed by properly admitted testimony that the victim exhibited behavior that was consistent with children who have been sexually abused. The challenged testimony was thus not based only on the victim's disclosures.

**5. Sexual Offenses— first-degree—instructions—specific acts not specified**

The trial court was not required in a prosecution for the first-degree sexual offense against a child to instruct the jury that the State had to prove the specific act alleged in the indictment.

**6. Sexual Offenses— first-degree—two counts—instructions**

There was no error in a prosecution for two counts of first-degree sexual offense where defendant alleged that the court did not properly instruct the jury that the two counts referred to two victims. The court properly instructed the jury, the jury was given verdict sheets that separated the charges, and the jury found defendant guilty of one and not guilty of the other.

**7. Satellite-Based Monitoring— clerical error—basis of order—remanded**

An order that defendant enroll in lifetime satellite-based monitoring was remanded for correction of a clerical error in the selection of the offense supporting the finding that defendant was guilty of a reportable conviction, and for consideration of whether defendant was a sexually violent predator, a recidivist, or whether his conviction involved the abuse of a minor, as well as whether defendant required the highest possible level of supervision and monitoring.

Appeal by defendant from judgment entered 30 July 2009 by Judge Christopher M. Collier in Alexander County Superior Court. Heard in the Court of Appeals 14 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Lauren M. Clemmons, for the State.*

*Kimberly P. Hoppin for defendant-appellant.*

HUNTER, Robert C., Judge.

James Patrick Treadway ("defendant") appeals from a judgment entered pursuant to a jury verdict finding him guilty of one count of

STATE v. TREADWAY

[208 N.C. App. 286 (2010)]

first degree sexual offense. After careful review, we reverse and remand in part and find no prejudicial error in part.

## Background

The evidence at trial tended to show that defendant and his girl-friend, Sally, moved in together in the fall of 2004, along with Lucy, Sally's six-year-old daughter, and the couple's son, Calvin.[1] Several months later, Sally's uncle, John, his girlfriend, Judy, and their five-year-old daughter, Amber, moved into the trailer. The sleeping arrangements were as follows: defendant and Sally shared a bedroom at one end of the trailer; Calvin had his own bedroom; Lucy and Amber shared a bedroom at the other end of the trailer; and John and Judy slept on a futon in the den approximately two to three feet outside of Lucy and Amber's bedroom.

At trial, Lane, Amber's step-grandmother, testified that on 22 January 2005, Amber told her that defendant "tr[ied] to put his pee pee in [her] pee pee," put his finger in her vagina, licked her vagina, and kissed her on the mouth. Lane then informed her husband, as well as John and Judy, of Amber's allegations. Amber's parents took her to the local hospital, but the hospital did not perform examinations to ascertain potential sexual abuse. The hospital did report the allegations to the Department of Social Services ("DSS"). Detective Mark St. Clair ("Detective St. Clair"), with the Alexander County Sheriff's office, investigated Amber's allegations. Detective St. Clair did not personally interview Amber, but he set up an interview through DSS. No charges were brought against defendant at that time.

In July 2005, Lucy made allegations that defendant sexually abused her as well. Detective St. Clair testified that when he interviewed Lucy, she pointed to the vaginal area on a diagram of a female child and stated that defendant touched her there with his fingers. Lucy claimed that the touching occurred at least four times when she was in bed at night. Lucy told Detective Donna Clanton ("Detective Clanton") that defend ant touched her "pee pee" with his fingers and "kissed her pee pee."

Defendant was indicted on four counts of first degree sexual offense—two counts against Amber (one count alleging digital penetration and one count alleging cunnilingus), and two counts against

---

1. Pseudonyms are used throughout this opinion to protect the anonymity of the minor children.

Lucy (one count alleging digital penetration and one count alleging cunnilingus). At trial, both Amber and Lucy testified that defendant digitally penetrated them when they lived with him. Neither girl testified that defendant had engaged in cunnilingus, although several witnesses testified that the girls previously alleged cunnilingus. Defendant testified that he never sexually molested the two girls.

After the close of the State's evidence, defense counsel moved to dismiss the charges and the trial court granted the motion as to the two indictments alleging cunnilingus because the State failed to present sufficient evidence to support those charges. On 30 July 2009, the jury found defendant guilty of first degree sexual offense against Amber and not guilty of first degree sexual offense against Lucy. The trial court determined that defendant was a Prior Record Level II for sentencing purposes and sentenced defendant to 260 to 321 months imprisonment. The trial court then entered written findings of fact and ordered defendant to submit to satellite based monitoring ("SBM") for the remainder of his natural life. Defendant timely appealed to this Court.

## Discussion

### I. Hearsay

[1] Defendant argues that the trial court erred in allowing inadmissible hearsay to be entered into evidence. Defendant did not object to the testimony, but has requested plain error review. "[P]lain error review is limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence." *State v. Golphin*, 352 N.C. 364, 460, 533 S.E.2d 168, 230 (2000), *cert. denied*, 121 S. Ct. 1379, 149 L. Ed. 2d 305 (2001). "The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (internal citation and quotation marks omitted).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2009). Rule 802 of the North Carolina Rules of Evidence provides that "[h]earsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2009).

First, defendant points to Lane's testimony that Amber told her that defendant "liked to have sex with her[,]" that "he tries to put his pee pee in [her] pee pee[,]" that "he would put his finger in her pee pee[,]" "lick her pee pee[,]" and "kiss[] her in the mouth." Lane further testified that Amber claimed defendant would follow her into the bathroom, make her take her clothes off, and sexually molest her. Upon review of the transcript, we hold that Lane's testimony was offered for the non-hearsay purpose of explaining Lane's subsequent conduct. *State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990) (noting that statements are not hearsay if they are admitted for the purpose of explaining the subsequent conduct of the person to whom the statement was directed); *State v. Tate*, 307 N.C. 242, 244, 297 S.E.2d 581, 583 (1982) ("The statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statements were made."). Here, Lane was describing Amber's original allegations against defendant, which prompted her to relay that information to Amber's parents so medical treatment could be obtained. Accordingly, Lane's statements were intended to establish why investigative action was originally taken, not to prove that defendant engaged in the conduct alleged.

[2] Additionally, these prior statements made by Amber to Lane served to corroborate Amber's trial testimony. "A prior consistent statement may be admissible as non-hearsay even when it contains new or additional information when such information tends to strengthen or add credibility to the testimony which it corroborates." *State v. Levan*, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990). Out-of-court statements offered to corroborate a child's testimony regarding sexual abuse have been held to be non-hearsay. *Id.*; *State v. Gilbert*, 96 N.C. App. 363, 365, 385 S.E.2d 815, 816 (1989). "The trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes." *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998). "When the statements are generally consistent with the witness' testimony, slight variations will not render them inadmissible. Such variations affect only the weight of the evidence which is for the jury to determine." *State v. Moore*, 300 N.C. 694, 697, 268 S.E.2d 196, 199 (1980) (internal citation omitted), *disapproved on other grounds by State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993). Although Lane's testimony provided statements about which Amber did not testify concerning cunnilingus and attempted penile penetration, we hold that Lane's testimony was sufficiently similar to Amber's testimony and served to corroborate

Amber's testimony regarding the abuse, particularly the act of digital penetration. The portions of Lane's testimony that varied from Amber's account at trial affected only the weight of the evidence. *Id.*

Second, defendant takes issue with the testimony of Tammy Mumford ("Ms. Mumford"), an expert in the area of clinical social work. Ms. Mumford, in relaying Amber's statements to her, testified as follows:

> [Defendant] had sex with her and that upon questioning what that meant, she told me that [defendant] had touched her private part and forced her to touch his. That she was forced to put her mouth on his penis and that he put his fingers inside her.

As with Lane's testimony, we hold that Ms. Mumford's testimony served to corroborate Amber's trial testimony. Although Ms. Mumford's testimony provided "new or additional information[,]" her testimony tended to "strengthen" Amber's testimony that she had been sexually abused by defendant. *State v. Lloyd*, 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001); *see also State v. Horton*, —— N.C. App. ——, 682 S.E.2d 754, 759 (2009) (holding that child abuse counselor's testimony that child told her that, among other things, the defendant tickled her and gave her cigarettes did not constitute inadmissible hearsay).

We note that the jury was instructed as to the proper method of evaluating prior out-of-court statements by a testifying witness. The trial court stated:

> When evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent with or may conflict with the witness' testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made and that it was consistent with or does conflict with the testimony of the witness at this trial, then you may consider this together with all other facts and circumstances bearing upon the witness' truthfulness, in deciding whether you will believe or disbelieve the witness' testimony at this trial.

[3] Third, defendant takes issue with the admission of testimony from Kathy Young-Shugar ("Ms. Young-Shugar"), an expert witness in the area of child mental health. Ms. Young-Shugar testified that she treated Kevin, John's son from a previous marriage, for "sexually reactive behavior" that was occurring between Kevin and Amber.

According to Ms. Young-Shugar's trial testimony, Kevin told her that he had seen defendant on top of Amber during the night " 'doing sex things.' " Defendant argues on appeal that Ms. Young-Shugar's testimony concerning Kevin's statements to her constitutes inadmissible hearsay. This arguments is without merit since defendant elicited this testimony on cross-examination when counsel asked Ms. Young-Shugar what she believed to be the source of Kevin's sexually reactive behavior. "Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Fraley*, —— N.C. App. ——, 688 S.E.2d 778, 785 (2010).

In sum, we find no error, much less plain error in the admission of Lane's, Ms. Mumford's, or Ms. Young-Shugar's testimony regarding the out-of-court statements of other witnesses. Assuming, *arguendo*, that the trial court should have *ex mero motu* excluded the testimony of these three witnesses, defendant has not proven to this Court that the admissions constituted plain error. Amber testified at trial that defendant digitally penetrated her on multiple occasions. Ms. Mumford testified, as discussed in greater detail *infra*, that Amber's behavior was consistent with a child that had been sexually victimized. Moreover, the charge pertaining to cunnilingus was dismissed by the trial court because Amber did not testify that defendant had engaged in that act even though Lane and Ms. Mumford testified that Amber had previously alleged cunnilingus. Defendant was convicted of one count of first degree sex offense for the digital penetration of Amber. We cannot say that the outcome of the trial would have been different had this testimony been excluded.

## II. Expert Testimony

[4] Next, defendant argues that the trial court erred in admitting the expert opinion of Ms. Mumford that she "diagnosed [Amber] with sexual abuse." Ms. Mumford was presented as an expert in clinical social work and defendant did not object. Defendant also did not object to Ms. Mumford's testimony, but has requested plain error review.

Rule 702 governs the admissibility of an expert opinion in sexual offense prosecutions. Rule 702 states in pertinent part: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009). "Expert testimony is properly admis-

sible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." *State v. Mackey*, 352 N.C. 650, 657, 535 S.E.2d 555, 558-59 (2000) (citation and quotation marks omitted). An essential question in determining admissibility of such evidence is "whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies." *Id.* at 657, 535 S.E.2d at 559 (citation and quotation marks omitted).

It is well established that

[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.

*State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (*per curiam*) (citing *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987), and *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179, *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001)). Where the expert testimony is based on a proper foundation, "[t]he fact that this evidence may support the credibility of the victim does not alone render it inadmissible." *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987).

In the present case, Ms. Mumford testified that she "diagnosed [Amber] with sexual abuse . . . ." This diagnosis was improper given the lack of physical evidence of abuse. *Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789. In a similar case, *State v. Dixon*, 150 N.C. App. 46, 52-53, 563 S.E.2d 594, 598, *aff'd per curiam*, 356 N.C. 428, 571 S.E.2d 584 (2002), we held that an error occurred where a clinical psychologist, Dr. Powell, testified that it was his opinion that the victim, S.E., had been sexually abused where the only physical evidence of abuse was "nonspecific irritation" of the victim's vagina that was not conclusive of sexual abuse. The psychologist based his opinion on interviews with the victim, her grandparents, her aunt, her mother, and the defendant, as well as the report of the physician who completed the child medical exam, the victim's use of anatomically correct dolls,

and the results of a psychological evaluation. *Id.* at 50, 563 S.E.2d at 597. This Court held:

> Although there were no physical findings to support a diagnosis of sexual abuse, the psychologist, Dr. Powell, was permitted to state his opinion that S.E. had been sexually abused. The opinion was not supported by an adequate foundation and its admission was error. Though Dr. Powell's testimony with respect to the various psychological tests, interviews, and reports upon which he relied may have been a sufficient foundation to support an opinion that S.E. did or did not exhibit symptoms or characteristics of victims of child sexual abuse, it was not a sufficient foundation for the admission of his opinion, under Rule 702, that S.E. had *in fact* been sexually abused.

*Id.* at 53, 563 S.E.2d at 598-99.[2]

The recent case of *State v. Chandler*, 364 N.C. 313, 697 S.E.2d 327 (2010), further supports our holding. In *Chandler*, 364 N.C. at 314-15, 697 S.E.2d at 328-29, the defendant argued before the Supreme Court that *Stancil* and its progeny significantly changed the law with regard to expert testimony in child sexual abuse cases, and, therefore, he was entitled to a new trial under N.C. Gen. Stat. § 15A-1415(b)(7) (2009). The Court held that *Stancil* did not change the law with regard to the permissible scope of expert opinion testimony in child sexual abuse cases; rather, the *Stancil* Court "simply applied the existing law on expert opinion evidence as stated in *Trent*." *Id.* at 318, 697 S.E.2d at 331. The Court in *Chandler* made the following clarification with regard to existing case law:

> Whether sufficient evidence supports expert testimony pertaining to sexual abuse is a highly fact-specific inquiry. Different fact patterns may yield different results. We agree with the State that "reasonable jurists continue to disagree over how or whether the rule discussed in *Trent* [applies] to different situations." However, the rule has remained constant. Before expert testimony may be admitted, an adequate foundation must be laid. *And for expert testimony presenting a definitive diagnosis of sexual abuse, an adequate foundation requires supporting physical evidence of the abuse.*

---

2. The dissent in *Dixon* pointed out that the majority was adopting a bright line rule "that expert opinion testimony that a child victim has been sexually abused is *only* admissible under Rule 702 when there is *physical* evidence to support a diagnosis of sexual abuse[.]" *Id.* at 54, 563 S.E.2d at 599 (Campbell, J., dissenting). Our Supreme Court affirmed the majority *per curiam*. 356 N.C. 428, 571 S.E.2d 584.

*Id.* at 318-19, 697 S.E.2d at 331 (internal citations omitted) (emphasis added). Accordingly, we must hold that Ms. Mumford's diagnosis of sexual abuse absent physical evidence was erroneously admitted in this case.

We must now determine whether the improperly admitted statement amounted to plain error. In surveying the case law, this Court has found plain error where an expert testified that the victim had, in fact, been abused despite the absence of physical evidence. *State v. Delsanto,* 172 N.C. App. 42, 49, 615 S.E.2d 870, 875 (2005) (holding that admission of medical expert's testimony that child was sexually abused by defendant in absence of any physical evidence of abuse was plain error); *State v. Ewell,* 168 N.C. App. 98, 105, 606 S.E.2d 914, 919 (holding that it was plain error for the trial court to allow expert testimony that it was "probable that [the child] was a victim of sexual abuse" when the testimony was not based on physical evidence), *disc. review denied,* 359 N.C. 412, 612 S.E.2d 326 (2005); *State v. Bush,* 164 N.C. App. 254, 259, 595 S.E.2d 715, 718 (2004) (holding that expert's testimony that she diagnosed the victim as having been sexually abused by defendant was plain error when no physical evidence was admitted); *see also State v. O'Connor,* 150 N.C. App. 710, 712, 564 S.E.2d 296, 297 (2002) (holding it was plain error to admit into evidence a written medical report wherein the treating physician stated that the victim's disclosure to her that defendant "sodomized and performed oral sex on him . . . was credible"). In *State v. Couser,* 163 N.C. App. 727, 729-32, 594 S.E.2d 420, 422-24 (2004), where the only physical evidence of abuse were abrasions on the victim's introitus that were not specifically related to sexual abuse, we held that a medical expert's opinion that the child "probably had been sexually abused" was plain error because it amounted to an improper opinion concerning the victim's credibility.

Unlike the cases cited *supra,* this case presents a situation where improper opinion testimony is followed by testimony properly admitted under Rule 702 and our case law. While Ms. Mumford, who had been treating Amber for over four years, did improperly testify that she diagnosed Amber with sexual abuse, she subsequently testified that Amber displayed behavior that was consistent with children who have been sexually abused, as permitted by *Stancil.*

When asked about the basis of her diagnosis, Ms. Mumford responded:

[Amber] has trouble with regulating her emotions, particularly with anxiety and anger and irritability. She is anxious often at times. It affects her functioning at school and at home; and she disclosed to me that she was sexually abused and that has been an ongoing issue for her since February '05.

Ms. Mumford also relayed reports made to her by Amber's family that she was exhibiting "clinging" behavior, was very anxious, and did not want to leave her house. Ms. Mumford did not directly relate this behavior to children who have been sexually abused; however, Ms. Mumford further testified that Amber had demonstrated "grooming behaviors," and that Amber felt that she had a special relationship with defendant, which was consistent with children who have been sexually abused. Additionally, Ms. Mumford related Amber's sexual abuse to the "sexually reactive" behavior between Amber and Kevin, stating that it is "typical of children who have been sexually abused to act out in these ways after their abuse . . . ." Ms. Mumford testified that "[i]t is normal with kids who have been sexually abused" to seek out something that traumatized them. Ms. Mumford stated that, in her experience, children Amber's age typically do not fantasize about sex. Ms. Mumford also testified that Amber would draw pictures of defendant "and act out her anger on the pictures and use a stabbing motion with a marker and tear them up and crumble them up[.]" When asked why a child would do that, Ms. Mumford responded that "[i]t was a release of her anger and her emotions against [defendant] and the trauma she's experienced." The above testimony was properly admitted and included a correlation between Amber's behavior and that of children who have been sexually abused. We also note that on cross-examination, Ms. Mumford acknowledged that, in her experience counseling children, Amber's behavior could be the result of some other event that happened in her past and not sexual abuse. This admission served to diminish the prejudicial impact of Ms. Mumford's improper diagnosis because it provided the jury with an alternative explanation for the diagnosis.

In addition to Amber's behavior, disclosures, the corroborating testimony of other witness, and the properly admitted portions of Ms. Mumford's testimony, there was some evidence that Kevin had seen defendant molest Amber. Although Kevin did not testify at trial that he saw defendant engaging in sexual activity with Amber, Ms. Young-Shugar testified that Kevin divulged to her that he had personally witnessed defendant " 'doing sex things' " with Amber at night. Ms.

Young-Shugar testified that Kevin also exhibited sexually reactive behavior which stemmed from witnessing these sex acts.

In sum, we hold that Ms. Mumford's statement that she diagnosed Amber with sexual abuse was erroneously admitted, but this error did not amount to plain error. *See State v. Boyd,* —— N.C. App. ——, ——, 682 S.E.2d 463, 468 (2009) (holding that child forensic interviewer and social worker who testified that the victim's "disclosure was plausible and consistent" did not amount to plain error where the victim exhibited changed behavior and gave consistent statements to family, police, and DSS). Ms. Mumford properly testified that Amber exhibited behavior that was consistent with children who have been sexually abused, and, therefore, we conclude that her testimony was not based solely on Amber's disclosures. We do not believe that a different result would have been reached at trial had Ms. Mumford's diagnosis been excluded.

## III. Jury Instructions

[5] Next, defendant argues that the trial court committed plain error by failing to instruct the jury that the State must prove that defendant digitally penetrated Amber's vagina, as alleged in the indictment. To amount to plain error, the instructional error must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins,* 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

N.C. Gen. Stat. § 14-27.4 (2009) states: "A person is guilty of a sexual offense in the first degree if the person engages in a sexual act . . . [w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" A sexual act is defined as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen. Stat. § 14-27.1(4) (2009).

The indictment pertaining to Amber alleged each essential element of first degree sexual offense, but added that the sexual act committed was "digital penetration of the child's vagina." Defendant acknowledges that the State was not required to specify in the indictment the sexual act alleged. *State v. Edwards,* 305 N.C. 378, 380, 289 S.E.2d 360, 362 (1982) (noting that "an indictment without specifying which 'sexual act' was committed is sufficient to charge the crime of

first-degree sexual offense and to inform a defendant of such accusation"). It is undisputed that since the State specified digital penetration in the indictment, it was bound to provide substantial evidence at trial that digital penetration occurred. *State v. Loudner*, 77 N.C. App. 453, 453-54, 335 S.E.2d 78, 79 (1985) (holding that the State is bound to prove the sexual act listed in the indictment). Where the State fails to provide substantial evidence of the allegations in the indictment, the defendant's motion to dismiss the charge should be granted. *Id.* To be clear, defendant does not argue that the State failed to provide substantial evidence of digital penetration at trial. In fact, Amber testified that defendant digitally penetrated her. Accordingly, the issue is not whether there was a fatal variance between the indictment and the evidence presented at trial. The issue before us is whether the trial court was required to instruct the jury that the State must prove that defendant digitally penetrated Amber's vagina as alleged in the indictment.

This Court has held that a jury does not have to reach a unanimous conclusion as to which sex act the defendant performed when returning a verdict of guilty to first degree sexual offense. *See State v. Youngs*, 141 N.C. App. 220, 232, 540 S.E.2d 794, 802 (finding no error where defendant argued that the "trial court erred in not instructing the jury that it must be unanimous as to which sex act defendant committed in order to convict him of first-degree sexual offense"), *appeal dismissed and disc. review denied,* — N.C. —, 547 S.E.2d 430 (2000); *State v. Petty*, 132 N.C. App. 453, 463, 512 S.E.2d 428, 434-35 (holding that the jury need only find that a sexual act occurred to convict the defendant of first degree sexual offense), *appeal dismissed*, 350 N.C. 598, 537 S.E.2d 490 (1999). However, the trial court must instruct the jury only on the sex act or acts supported by the evidence. *State v. Hughes*, 114 N.C. App. 742, 746, 443 S.E.2d 76, 79 (1994) (holding that the trial court erred in instructing the jury that it could find defendant guilty of first degree sexual offense based on the sex act of penetration by an object where there was no evidence to support that theory).

In the resent case, the indictment stated that defendant digitally penetrated Amber. The evidence at trial supported that allegation. The trial court then properly instructed the jury on each element of first degree sexual offense and stated that "[a] sexual act means any penetration, however slight, by an object into the genital opening of a person's body." The trial court left out cunnilingus, fellatio, analingus,

and anal intercourse from the definition of a sexual act, presumably because those theories were not supported by the evidence.

Defendant has not cited a case, and we have found none, where our Courts have required the trial court to instruct the jury that it could only find defendant guilty if the State proved beyond a reasonable doubt at trial that defendant committed the sex act stated in the indictment. Such a holding would be contrary to this Court's determination in *State v. Lark*, —— N.C. App. ——, ——, 678 S.E.2d 693 (2009), *disc. review denied*, 363 N.C. 808, 692 S.E.2d 111 (2010). There, the defendant was tried and convicted on an indictment for felonious child abuse that listed "anal intercourse" as the underlying sex act. *Id.* at ——, 678 S.E.2d at 699. "[T]he trial court instructed the jury on the theory of anal intercourse that was alleged in the indictment. In addition, the trial court also instructed on the theory of fellatio that was not alleged in the indictment, but that was supported by the evidence." *Id.* at ——, 678 S.E.2d at 701. Defendant assigned error to the jury instructions, arguing that the trial court was not permitted to instruct the jury on a sex act not set out in the indictment. *Id.* at ——, 678 S.E.2d at 700. This Court found no error in the instructions and held that the trial court is permitted to instruct the jury on all sex acts supported by the evidence, even if those sex acts were not set out in the indictment. *Id.* at ——, 678 S.E.2d at 701-02. A holding in the present case that the trial court is required to instruct the jury that it must find the defendant guilty of the sex act stated in the indictment would not comport with the reasoning in *Lark*—that the trial court's instructions must conform to the evidence presented at trial, but are not limited to those sex acts alleged in the indictment.

Moreover, "the primary purpose of the indictment is to enable the accused to prepare for trial." *State v. Farrar*, 361 N.C. 675, 678, 651 S.E.2d 865, 866-67 (2007) (citation and quotation marks omitted). The State's discretionary decision to include the sexual act that formed the basis of the first degree sexual offense indictment gave more notice to defendant than is required and certainly enabled him to better prepare his defense. Requiring a jury instruction that the State must prove the sexual act specified in the indictment would dissuade the State from including such specification thereby defeating the primary purpose of the indictment—notice to defendant of the charges against him. In sum, we hold that the trial court properly instructed the jury on the offense charged and was not required to instruct the jury that the State had to prove digital penetration as alleged in the indictment.

**[6]** Defendant further contends that the trial court did not properly instruct the jury that the two counts of first degree sexual offense referred to two alleged victims. This argument is without merit. The trial court properly instructed the jury that "Defendant has been charged with two counts of first degree sexual offense. Each of which must be considered by you separately and independently." The jury was then given verdict sheets that separated the two charges and specified one as pertaining to Amber and the other as pertaining to Lucy. The jury then found defendant guilty as to Amber and not guilty as to Lucy. Even assuming error, defendant has not shown any prejudice where the jury clearly deliberated each charge separately. We find no error, much less plain error, in the trial court's jury instructions.

## IV. SBM

**[7]** Finally, defendant argues that the trial court erred in ordering him to enroll in lifetime SBM. Defendant asserts that: (1) the trial court erroneously found as fact that defendant had been convicted of an offense against a minor pursuant to N.C. Gen. Stat. § 14-208.6 (2009), and (2) the trial court erroneously found as fact that defendant was convicted of an aggravated offense.[3]

First, the State concedes that the trial court incorrectly found as fact that defendant had been convicted of "an offense against a minor under G.S. 14-208.6(1i) . . . and defendant is not the parent of the victim." However, defendant admits that he was convicted of a reportable offense—a sexually violent offense under N.C. Gen. Stat. § 14-208.6(5). Therefore, it is undisputed that the trial court selected the wrong offense to support its finding that defendant was found guilty of a reportable conviction.

"We realize that in the process of checking boxes on form orders, it is possible for the wrong box to be marked inadvertently, creating a clerical error which can be corrected upon remand." *State v. Yow*, —— N.C. App. ——, ——, 693 S.E.2d 192, 194 (2010). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth.' " *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (quoting *State v. Linemann*, 135 N.C. App. 734, 738, 522 S.E.2d 781, 784 (1999)). A "clerical error" has been defined as "[a]n error resulting

---

3. The State argues that defendant failed to object to the imposition of SBM; however, our Courts have not required an objection where defendant challenges on appeal the trial court's written findings of fact.

from a minor mistake or inadvertence, in writing or copying something on the record, and not from judicial reasoning or determination." *State v. Jarman*, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000) (quoting *Black's Law Dictionary* 563 (7th ed. 1999)).

This Court recently addressed this same issue in *State v. May*, —— N.C. App. ——, ——, 700 S.E.2d 42, 44 (2010) and held that the trial court committed a clerical error in checking Box 1(a) instead of Box 1(b) on the judicial findings and order for sex offenders form. The Court remanded the case back to the trial court for correction of the clerical error where, as here, the defendant admitted that he had committed a sexually violent offense. *Id.* at ——, 700 S.E.2d at 44.

Next, defendant argues that first degree sexual offense is not an aggravated offense, thus the trial court erred in finding as fact that defendant had committed an aggravated offense. An aggravated offense is defined as "any criminal offense that includes either": (i) "engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence"; or (ii) "engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old." N.C. Gen. Stat. § 14-208.6(1a) (2009). The State in this case indicted defendant under N.C. Gen. Stat. § 14-27.4(a)(1), which states:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim.

The State did not allege in the indictment, nor did it provide evidence at trial, that defendant was guilty of first degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(2), which requires use of force *and* either the use of a dangerous weapon, infliction of serious personal injury, or that the perpetrator was aided and abetted by one or more persons. The trial court instructed the jury on the elements of N.C. Gen. Stat. § 27.4(a)(1) and the judgment sets out defendant's conviction as being pursuant to N.C. Gen. Stat. § 27.4(a)(1). Accordingly, our holding in this case is limited to N.C. Gen. Stat. § 14-27.4(a)(1).

Defendant argues, and we agree, that *State v. Phillips*, —— N.C. App. ——, 691 S.E.2d 104 (2010) is controlling and requires a conclusion that first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1) does not qualify as an aggravated offense. The State

makes no contrary argument, but seeks to preserve the issue for Supreme Court review. In *Phillips*, —— N.C. App. at ——, 691 S.E.2d at 105, the defendant pled guilty to, *inter alia,* felonious child abuse pursuant to N.C. Gen. Stat. § 14-318.4(a2) (2009). The trial court found that the offense qualified as an aggravated offense under N.C. Gen. Stat. § 14-208.6(1a) and ordered the defendant to lifetime SBM. *Phillips,* —— N.C. App. at ——, 691 S.E.2d at 105. The defendant argued on appeal that the offense did not qualify as an aggravated offense. *Id.* In making its decision, the Court in *Phillips* relied on the holding in *State v. Davison,* —— N.C. App. ——, 689 S.E.2d 510 (2009), where, after reviewing the language of the statutes at issue, this Court held that the General Assembly's "repeated use of the term 'conviction' " compelled the conclusion that the trial court "is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction" when determining whether a defendant's "conviction offense [i]s an aggravated offense . . . ." *Id.* at ——, 689 S.E.2d at 517; *accord State v. Singleton,* —— N.C. App. ——, —— 689 S.E.2d 562, *disc. review improvidently allowed,* —— N.C. ——, —— S.E.2d —— (2010).

The *Phillips* Court then reviewed the elements of felonious child abuse under N.C. Gen. Stat. § 14-318.4(a2), which provides: "Any parent or legal guardian of a child less than 16 years of age who commits or allows the commission of any sexual act upon the child is guilty of a Class E felony." The Court then reasoned:

[I]f an offense does not involve engaging in a sexual act through the use of force or threat of serious violence, the offense can only be found to be an "aggravated offense" if it involves engaging in sexual acts involving penetration "with a victim who is less than 12 years old." However, felonious child abuse by the commission of any sexual act provides that the victim must be "a child less than 16 years of age." *Since "a child less than 16 years" is not necessarily also "less than 12 years old," without looking at the underlying facts, a trial court could not conclude that a person convicted of felonious child abuse by the commission of any sexual act committed that offense against a child less than 12 years old.* Therefore, in light of our review of the plain language of the statutes at issue, we must conclude that the trial court erred when it determined that defendant's conviction offense of felonious child abuse by the commission of any sexual act under N.C.G.S. § 14-318.4(a2) is an "aggravated offense" as defined under N.C.G.S. § 14-208.6(1a) because, when considering the ele-

ments of the offense only and not the underlying factual scenario giving rise to this defendant's conviction, the elements of felonious child abuse by the commission of any sexual act do not "fit within" the statutory definition of "aggravated offense."

*Phillips,* —— N.C. App. at ——, 691 S.E.2d at 107-08 (emphasis added) (internal citations omitted).

In the present case, the State alleged first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1), which requires that the child victim be "under the age of 13." An aggravated offense requires that the child be "less than 12 years old." N.C. Gen. Stat. § 14-208.6 (1a). Clearly, a child under the age of 13 is not necessarily also a child less than 12 years old. Following the holdings of *Davison* and *Phillips,* we are obliged to hold that first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1) is not an aggravated offense. *In re Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Nevertheless, even where a defendant has not committed an aggravated offense, the trial court may still impose SBM if it is determined that: (1) the defendant is a sexually violent predator; (2) the defendant is a recidivist; or (3) the conviction involved the physical, mental, or sexual abuse of a minor, and based on the risk assessment performed by the Department of Correction, the defendant requires the highest possible level of supervision and monitoring. N.C. Gen. Stat. § 14-208.40A (c), (d). In *Phillips,* N.C. App. at , 691 S.E.2d at 108, a risk assessment had already been performed by the Department of Correction and the defendant was found to be "low risk." Additionally, the trial court had already determined that the defendant was not a sexually violent predator or a recidivist. *Id.* Consequently, this Court found that the trial court could not possibly order the defendant to enroll in SBM and ordered the trial court to reverse its determination as to SBM on remand. *Id.* Here, the record indicates that the trial court did not determine whether defendant is a sexually violent predator or a recidivist, and a Department of Correction assessment has not been performed. Accordingly, we reverse the trial court's order and remand for correction of the mistake made by the trial court in its finding regarding the reportable conviction, and we remand for consideration of whether defendant is a sexually violent predator, a recidivist, or whether his conviction involved the physical, mental, or sexual abuse of a minor, and based on the risk assessment performed by the Department of Correction, defendant requires the highest possible level of supervision and monitoring.

Defendant seeks to preserve his argument that SBM violates the *ex post facto* clause of the United States Constitution, but acknowledges that this argument has been foreclosed pursuant to *State v. Bare*, —— N.C. App. ——, 677 S.E.2d 518 (2009). Our Supreme Court recently held in *State v. Bowditch*, 364 N.C. 335, 700 S.E.2d 1 (2010), that imposition of SBM does not violate the *ex post facto* clause of the state or federal constitutions as it is a civil regulatory scheme and not a criminal punishment.

## Conclusion

Based on the foregoing analysis, we hold that the trial court: (1) did not commit plain error in admitting the testimony of various witnesses; (2) did not commit plain error in its instructions to the jury; and (3) erred in its findings of fact pertaining to imposition of SBM.

No Prejudicial Error in part; Reversed and Remanded in part.

Judges HUNTER, Robert N., Jr. and WALKER concur.