STATE OF NORTH CAROLINA
v.
RALPH EUGENE FRADY

No. COA12-1375

Filed 6 August 2013

**Sexual Offenses—first-degree sexual offense with a child—expert testimony—impermissible opinion regarding victim's credibility**

The trial court erred in a child sexual abuse case by admitting expert testimony that the child victim's disclosure that she had been sexually abused was consistent with sexual abuse. Without physical evidence, the expert testimony that sexual abuse had occurred was an impermissible opinion regarding the victim's credibility. Because the victim's credibility was central to the outcome of the case, the admission of the evidence was prejudicial.

Appeal by defendant from judgment entered 27 April 2012 by Judge Sharon T. Barrett in Transylvania County Superior Court. Heard in the Court of Appeals 9 May 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Angenette Stephenson, for the State.*

*Mark Montgomery for defendant.*

ELMORE, Judge.

Ralph Eugene Frady (defendant) was found guilty of first degree sexual offense with a child and of one count of taking indecent liberties with a child. On 27 April 2012, the trial court sentenced defendant as a prior record level I to a minimum of 192 and a maximum of 240 months

imprisonment. From this conviction and sentence, defendant appeals. After careful consideration, we order a new trial.

## I. Background

At trial, the State presented the following evidence: On 31 July 2010, defendant, a Terminix technician, went to Diane Moore's residence to fix a toilet in the basement. Moore had a contract for pest control through Terminix, and defendant had been assigned to Moore's residence for approximately two years. Defendant had previously helped Moore with odd jobs during his free time and often did not charge for his services. Moore is the maternal great-grandmother of the alleged victim in the case, Debbie,[1] who was six-years old at the time of the alleged offense. Debbie resides with Moore and knows her as her mother.

When defendant arrived, Moore let him in and followed him to the basement. As he walked down the stairs, defendant asked "[w]here is my little girl?" Moore told him, and then she saw defendant head to her bedroom where Debbie was watching television and playing Nintendo. Debbie was wearing a nightgown and no underwear. Debbie testified that defendant came into the room and played in her "private spot" with his tongue and hands. She threw her Nintendo remote at him to get him to stop. Debbie also alleged that defendant had tickled her "private spot" with his fingers and tongue on one prior occasion.

Debbie went into the kitchen where her mother was drying her hands and told her about the incident. At that time, defendant was in the basement. Moore immediately confronted defendant, asking, "[w]hy would you do that to my baby?" Defendant responded, "I didn't do nothing. I didn't do nothing."

On 1 August 2010, Detective Steve Woodson and Sergeant Dan Harris with the Brevard Police Department interviewed Debbie and Moore. Detective Woodson testified that Debbie accused defendant of doing something with his mouth to her private area; she showed him by taking her tongue and flicking it against her lips.

Debbie went to Mission Hospital for a physical examination on 11 August 2011. Before the examination, Christine Nicholson, a social worker at Mission Children's Hospital, conducted a forensic interview with Debbie. The video of Debbie's interview was played for the jury as Nicholson testified. During the interview, Nicholson presented Debbie with a diagram showing a prepubescent female, and she circled the

---

1. A pseudonym has been used to protect the identity of the child.

vaginal area on the drawing to indicate where defendant had touched her. The maltreatment team at Mission Hospital reviewed the interview.

Dr. Cindy Brown, the medical director of a child abuse valuation program at Mission Hospital, participated on the maltreatment team but did not personally examine or interview Debbie. Prior to trial, defense counsel made a motion in limine to exclude Dr. Brown's testimony. Dr. Brown did not testify in the State's case-in-chief; however, after the defense rested, the State called her as a rebuttal witness on the basis that the defense's evidence put the victim's credibility at issue. It is a portion of Dr. Brown's testimony that is the subject of this appeal.

Defendant testified at trial, alleging that Debbie asked him to watch television with him, and, when he declined, she threw her Nintendo controller at him. Defendant left the room and went to the basement to fix the toilet. The defense called several character witnesses, including members of defendant's church, his employer, and his ex-wife; each testified to defendant's truthfulness and integrity. Defendant now appeals.

## II. Analysis

Defendant contends that the trial court erred in admitting a portion of Dr. Brown's testimony as it impermissibly spoke to Debbie's credibility. We agree. The issue before us stems from the following testimony offered by Dr. Brown on rebuttal:

> Q. Did you form an opinion as to whether [Debbie's] disclosure was consistent with sexual abuse?
>
> DEFENDANT: Objection. Move to strike. Motion for retrial.
>
> THE COURT: Overruled. Overruled. Overruled.
>
> A. Yes.
>
> Q. And what was your opinion?
>
> A. Our report reads that her disclosure is consistent with sexual abuse.
>
> Q. And what did you base your opinion on?
>
> A. The consistency of her statements over time, the fact that she could give sensory details of the event which include describing being made wet and the tickling sensation. . . . [a]nd her knowledge of the sexual act that is beyond her developmental level.

STATE v. FRADY

[228 N.C. App. 682 (2013)]

We first note that defendant preserved this issue for appellate review. Here, the trial court requested the State to forecast the evidence it intended to present if Dr. Brown testified. The State informed the trial court that it intended to ask Dr. Brown if Debbie's disclosure was consistent with sexual abuse. Defendant did not object during the forecast but did object to the testimony now complained of *at the time it was offered* and timely made a motion to strike and motion for retrial.[2] The objection was overruled and the motions were denied. We hold that the grounds for the objection were apparent from the context. *See* N.C.R. App. P. 10(a) (preserving an issue for appellate review requires a party to "have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

It is well settled that "[e]xpert opinion testimony is not admissible to establish the credibility of the victim as a witness." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598, *aff'd*, 356 N.C. 428, 571 S.E.2d 584 (2002) (citation omitted). "However, those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness." *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988). "With respect to expert testimony in child sexual abuse prosecutions, our Supreme Court has approved, upon a proper foundation, the admission of expert testimony with respect to the characteristics of sexually abused children and whether the particular complainant has symptoms consistent with those characteristics." *Dixon*, 150 N.C. App. at 52, 563 S.E.2d at 598 (citations omitted).

In order for an expert medical witness to render an opinion that a child has, in fact, been sexually abused, the State must establish a proper foundation, i.e. physical evidence consistent with sexual abuse. *Id.* Without physical evidence, expert testimony that sexual abuse has occurred is an impermissible opinion regarding the victim's credibility. *Id.*

Here, Dr. Brown stated that Debbie's "disclosure" was "consistent with sexual abuse." The alleged "disclosure" was Debbie's description of the abuse. The State argues that the contested portion of Dr. Brown's testimony is admissible "because it could help the jury understand the behavior patterns of sexually abused children." We do not agree. While Dr. Brown did not diagnose Debbie as having been sexually abused,

---

2. Defense counsel made a motion for retrial. We conclude that defense counsel's intent was to make a motion for mistrial.

she essentially expressed her opinion that Debbie is credible. We see no appreciable difference between this statement and a statement that Debbie is believable. The testimony neither addressed the characteristics of sexually abused children nor spoke to whether Debbie exhibited symptoms consistent with those characteristics. *See Id.*

Furthermore, Dr. Brown based her opinion solely on "the consistency of Debbie's statements over time," the fact that she could provide sensory details, and because her knowledge of the sexual act was beyond her developmental level. This may have been a sufficient foundation to support an opinion as to whether Debbie exhibited symptoms or characteristics of victims of child sexual abuse; however, it was insufficient for the admission of Dr. Brown's judgment that Debbie is believable. Additionally, the record contains no physical evidence indicating that Debbie was sexually abused, and Dr. Brown never personally examined or interviewed her; she merely reviewed the forensic interview and the case file. As such, Dr. Brown was not in a position to know whether Debbie's statements remained consistent over time. Therefore, the contested testimony amounted only to an impermissible opinion regarding the victim's credibility, and the trial court erred in admitting it. *See State v. Oliver*, 85 N.C. App. 1, 11, 354 S.E.2d 527, 533 (1987) (citation omitted) ("[O]ur courts have held expert testimony inadmissible if the expert testifies that the prosecuting child-witness in a trial for sexual abuse is believable, or to the effect that the prosecuting child-witness is not lying about the alleged sexual assault.").

We must next discern whether the trial court's error was prejudicial. A prejudicial error occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant." N.C. Gen. Stat. § 15A-1443 (2011). Here, defendant argues that the State "obviously chose to present Dr. Brown during rebuttal for dramatic effect, insuring that she would be the last witness the jury would hear before it began its deliberations. It is probable that this strategy had its intended effect." We agree.

The State's only direct evidence of defendant's guilt in the case *sub judice* was Debbie's testimony. There was no medical evidence indicating that Debbie had been sexually abused, there was no evidence that Debbie exhibited intense emotional trauma after the incident, and no testimony was offered regarding whether her behavior following the alleged sexual abuse was consistent with victims of sexual abuse. Essentially, the jury was left to weigh Debbie's credibility against defendant's credibility,

making Debbie's credibility central to the outcome. Because Dr. Brown's rebuttal testimony spoke directly to Debbie's credibility, it had a probable impact on the outcome of the trial.

## III.  Conclusion

In sum, we conclude that the trial court committed prejudicial error in admitting the contested testimony as it spoke directly to Debbie's credibility. Accordingly, we grant defendant a new trial. As defendant's remaining issues may not arise in a new trial, we decline to address them.

New trial.

Judges GEER and DILLON concur.