An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1044
NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.                                      Burke County
                                        No. 11 CRS 2390
RUSSELL SCOTT BUCK,
        Defendant.


Appeal by defendant from judgment entered 13 February 2013 by Judge Robert C. Ervin in Burke County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.*

> *Michael E. Casterline for defendant-appellant.*


GEER, Judge.


Defendant Russell Scott Buck was tried for 16 offenses and found guilty of one count of first degree sexual offense under N.C. Gen. Stat. § 14-27.4 (2013). On appeal, defendant primarily argues that the trial court erred in denying his motion to dismiss when the State failed to present evidence that defendant committed a sex offense on any particular date or in any particular place. Because North Carolina courts have not

required evidence of a specific incident to convict a defendant of first degree sex offense with a child and because the record contains sufficient evidence to support defendant's conviction, we hold that the trial court properly denied the motion to dismiss.

## Facts

The acts that were the basis for the indictments in this case occurred while defendant was living with his daughter, "Cheyenne," and two sons, "Mark" and "Ricky," in a single-wide trailer in a Morganton trailer park.[1] Cheyenne, Mark, and Ricky are defendant's only children. Defendant had primary custody of the children, with their mother, Rachel, having visitation rights every other weekend.

Allegations that defendant was abusing his daughter surfaced after Mark had an argument with defendant on 3 August 2011. That evening, Mark rode his bike "across the county to his mother's house." After Mark told his mother that defendant had beaten him, she took Mark to the Burke County Sheriff's Office. There, Mark reported that defendant had physically abused him and his brother and sexually abused Cheyenne. Following an investigation by the Sheriff's Office that involved

---

[1] Pursuant to N.C.R. App. P. 3.1(b), we refer to the alleged victim and her siblings by pseudonyms to protect the minors' privacy and for ease of reading.

interviews with defendant, Rachel, the children, and others, defendant was indicted for 10 counts of first degree statutory sex offense and six counts of statutory rape, allegedly committed against Cheyenne from 2002 to 2011.

At trial, the jury found defendant guilty of one count of first degree sexual offense with a child under 13 years of age occurring in 2007 and not guilty of the remaining charges. The trial court sentenced defendant to a presumptive-range term of 216 to 269 months imprisonment. Defendant timely appealed to this Court.

I

Defendant first contends that the trial court erred in denying his motion to dismiss the charge of first degree sexual offense occurring in 2007. Defendant notes that "Cheyenne referenced the year 2007 only once" when she testified that defendant would give her extra money and other things "whenever I'd give him sexual favors," which Cheyenne stated happened in "2010, 2009, 2008, 2007." Defendant argues that because the State failed to establish that "sexual favors" is synonymous with the definition of "sexual act," set forth in N.C. Gen. Stat. § 14-27.1(4) (2013), the State failed to present sufficient evidence that defendant committed a "sexual act" against Cheyenne in 2007.

When ruling on a motion to dismiss for insufficient evidence, "the trial court's inquiry is limited to a determination of 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.'" *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Outlaw*, 159 N.C. App. 423, 426, 583 S.E.2d 625, 627 (2003) (quoting *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). "'In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences.'" *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (quoting *State v. Fritsch*, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000)).

First degree sexual offense may be established by a showing of (1) a "sexual act," (2) with a victim who is under 13 years of age, (3) a defendant who is at least 12 years old, and (4) who is also at least four years older than the victim. *See* N.C. Gen. Stat. § 14-27.4(a)(1). A "sexual act" is defined as

fellatio, cunnilingus, analingus, or anal intercourse, but it excludes vaginal intercourse. N.C. Gen. Stat. § 14-27.1(4).

Defendant does not dispute that evidence exists regarding each of these elements, but rather contends that the evidence is insufficient that a sexual act occurred in 2007, the sole count on which the jury convicted defendant. Mark, however, testified that he saw Cheyenne performing oral sex on defendant "like -- six years" from "this year," which was 2013. From this testimony, the jury could have found that an act of fellatio had occurred in 2007. Defendant's arguments that Mark's response was "confused" and "imprecise and vague" go to the credibility and weight to be given the testimony, questions solely within the purview of the jury.

Moreover, although Cheyenne testified generally that she gave defendant "sexual favors" in 2007, she explained in other testimony what she meant by sexual favors. According to Cheyenne, she performed fellatio on defendant beginning in 2002, when she was six years old and that defendant began performing cunnilingus on her when she was about 10 years old, which would have been in 2005. She testified that the last time she had "sexual contact" with defendant was "a couple days before I was taken away from him" and that "all of this stuff" -- which a jury could find included the fellatio and cunnilingus --

continued until Cheyenne was removed from defendant's home in 2011. Notably, Cheyenne never testified that she stopped performing fellatio on defendant or that defendant ever ceased performing cunnilingus on her.

When Mark's and Cheyenne's testimony is viewed in the light most favorable to the State, with all reasonable inferences drawn in its favor, this testimony is sufficient to support a reasonable juror's conclusion that defendant, in 2007, performed a sexual act on Cheyenne within the meaning of N.C. Gen. Stat. § 14-27.1(4). While defendant argues that Mark's and Cheyenne's testimony did not provide "evidence of any specific sexual act occurring in any particular place at a particular time," defendant does not cite any authority requiring such specificity. Indeed, this Court has acknowledged "the realities of a continuous course of repeated sexual abuse" as a result of which "each succeeding act, no matter how vile and perverted, becomes more routine, with the latter acts blurring together and eventually becoming indistinguishable. It thus becomes difficult if not impossible to present specific evidence of each event." *State v. Bullock*, 178 N.C. App. 460, 473, 631 S.E.2d 868, 877 (2006).

We hold that the State's evidence was sufficient to defeat defendant's motion to dismiss the charge that in 2007, he

committed first degree sex offense with a child under the age of 13. *See State v. Khouri*, 214 N.C. App. 389, 397, 716 S.E.2d 1, 7 (2011) (holding that State presented sufficient evidence of statutory sexual offense with person who is 13, 14, or 15 years of age when victim testified that sexual touching and oral sex occurred regularly beginning when she was 11 or 12 and victim did not testify that acts stopped when defendant began to engage in vaginal intercourse with her at age 14, and "the jury could reasonably infer that the sexual acts that began at the ages of eleven or twelve continued on occasion after the instances of vaginal intercourse began"), *disc. review denied*, 365 N.C. 546, 742 S.E.2d 176 (2012). The trial court, in this case, therefore, properly denied defendant's motion to dismiss.

## II

Defendant next argues that the trial court committed plain error when it allowed Elizabeth Browning, who worked at South Mountain Children and Family Services, to testify that Cheyenne's lack of any physical signs or symptoms of sexual abuse was consistent with her claims of having been repeatedly sexually abused or raped. Defendant contends that Ms. Browning's testimony improperly bolstered Cheyenne's testimony because Ms. Browning found no physical evidence that Cheyenne

was abused and because "[t]he State's case depended on the relative credibility of Cheyenne and her father."

Because defendant did not object to this testimony, we review it for plain error. Our Supreme Court has explained:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, . . . plain error is to be applied cautiously and only in the exceptional case[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

It is well established that "[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (per curiam). Nevertheless, "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *Id.* at 267, 559 S.E.2d at 789. "'The

fact that [such] evidence may support the credibility of the victim does not alone render it inadmissible.'" *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598 (quoting *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987)), *aff'd per curiam*, 356 N.C. 428, 571 S.E.2d 584 (2002).

We note that, without objection, the State tendered Ms. Browning as an expert witness in the field of sexual assault nurse examinations ("SANE"). Ms. Browning testified that she had examined Cheyenne on 16 August 2011 and that she appeared "normal," meaning that Cheyenne did not have any physical symptoms of anal or vaginal penetration. The State then elicited the following testimony from Ms. Browning on direct examination:

> Q Ms. Browning, do you know what sexual abuse [Cheyenne] disclosed to the Sheriff's department after you performed [her] exam?
>
> A It's my understanding that she did disclose penetration.
>
> Q And was that on one occasion or on multiple occasions over a long period of time?
>
> A To my knowledge, it was multiple encounters.
>
> Q Now, knowing that and looking back at your examination, are the findings in your examination consistent with that history of sexual abuse over a long period of time?

A    Yes, it is.

Q    And explain to the jury how that would be.

A    Well again, things heal.  If there was an injury -- there may not have been an injury.  We just talked about what happens to the hymen when estrogen takes hold.  It gets thick, it gets elastic, it stretches.  We wouldn't know.  It's consistent with what she said.

Immediately following this exchange, defense counsel elicited the following testimony from Ms. Browning on cross-examination:

Q    Your examination is also consistent with no abuse occurring, isn't it?

A    Yes.

Q    Okay.  There's really no way to tell.  Is that a fair statement?

A    Yes.

Ms. Browning then explained that she had performed over 1,000 physical SANE examinations.  She testified that only "10 percent" of children who are sexually abused show physical signs and that this was based on a review of the academic literature.

Ms. Browning's testimony amounted to an opinion that Cheyenne's having a history of sexual abuse should not be ruled out just because of Cheyenne's SANE examination since the profile or typical characteristics of a sexually abused child do

not necessarily include physical findings. Although Ms. Browning testified that "the findings in [her] examination [were] consistent with that history" of penetration which Cheyenne had disclosed to authorities, the context of her testimony makes it clear that the reference was to an alleged history.

Further, the defense elicited testimony from Ms. Browning on cross-examination that her findings were also consistent with Cheyenne not having been abused. At no point did Ms. Browning express an opinion that Cheyenne was the victim of abuse. Rather, Ms. Browning gave an opinion whether Cheyenne had "symptoms or characteristics consistent therewith" as permitted by *Stancil*, 355 N.C. at 267, 559 S.E.2d at 789. The trial court, therefore, did not commit plain error in admitting Ms. Browning's testimony. *See also In re T.R.B.*, 157 N.C. App. 609, 618, 582 S.E.2d 279, 286 (2003) (upholding admission of testimony of alleged victim's examining doctor that the lack of physical findings was "'consistent'" with claims of sexual abuse because doctor "did not testify that the allegations in the juvenile petition were accurate, but only that her examination of [alleged victim] was 'consistent' with her interview of him").

Defendant, however, relies on *State v. Frady*, ___ N.C. App. ___, 747 S.E.2d 164, *disc. review denied*, ___ N.C. ___, 752 S.E.2d 465 (2013). In *Frady*, a medical expert, who did not personally examine the alleged victim, testified that her "'disclosure [is] consistent with sexual abuse'" based solely on "'the consistency of [the alleged victim's] statements over time,' the fact that she could provide sensory details, and because her knowledge of the sexual act was beyond her developmental level." *Id.* at ___, 747 S.E.2d at 166, 167. This Court noted that "[t]he alleged 'disclosure' was [the victim's] description of the abuse" and explained that "[there] may have been a sufficient foundation to support an opinion as to whether [the victim] exhibited symptoms or characteristics of victims of child sexual abuse; however, it was insufficient for the admission of Dr. Brown's judgment that [the victim] is believable." *Id.* at ___, 747 S.E.2d at 167. The Court held that "[w]hile Dr. Brown did not diagnose [the victim] as having been sexually abused, she essentially expressed her opinion that [the victim] is credible[,]" and the trial court, therefore, erred in admitting the testimony. *Id.* at ___, 747 S.E.2d at 167.

Thus, in *Frady*, the expert did not testify regarding the alleged victim having exhibited symptoms or characteristics

consistent with general profiles and characteristics of sexually abused children, but rather testified that the victim's disclosures were consistent with sexual abuse -- an expression of an expert opinion regarding the victim's credibility. In this case, however, Ms. Browning testified extensively, based on a review of academic literature, about the elasticity of female genitalia as the reason why a vast majority of young girls who are sexually abused do not exhibit physical symptoms of abuse. Based on these characteristics -- rather than solely on the particularities of Cheyenne's disclosure -- Ms. Browning testified that Cheyenne's disclosure was consistent with an alleged claim of abuse. For these reasons, Ms. Browning did not improperly bolster Cheyenne's claims of abuse, and the trial court did not commit plain error in allowing her testimony.

No error.

Judges STEELMAN and McCULLOUGH concur.

Report per Rule 30(e).