An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-340
NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.

CHRISTOPHER MEEKS

Jackson County
Nos. 13 CRS 146-47

Appeal by Defendant from judgments entered 9 October 2013 by Judge Marvin P. Pope, Jr., in Jackson County Superior Court. Heard in the Court of Appeals 27 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Olga Vysotskaya, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Jason Christopher Yoder, for Defendant.*

STEPHENS, Judge.

*Evidence and Procedural Background*

Defendant Christopher Meeks appeals from judgments entered upon his conviction of two counts of indecent liberties with a child. The evidence at trial tended to show the following: In late 2010, Defendant began dating "Jan," the mother of two

daughters, "Elizabeth" and "Ellen."[1] In late December 2012, Jan and her daughters, then ages eight and five, respectively, were living with Defendant. Jan and Defendant had been fighting a great deal and were in the process of ending their relationship. On 23 December, Jan took a Xanax and fell asleep on the sofa. At the girls' grandmother's home the next evening, Ellen told her mother that the girls had showered with Defendant that morning. Jan questioned Defendant over the phone about Ellen's report, and Defendant denied showering with the girls. Later that night, the girls told Jan about an additional incident which had occurred on 23 December:

> Q. Okay. What did they tell you on the ride home?
>
> A. That [Defendant] had got out [of] the shower the night before and was laying on the bed, and [Ellen] kept shaking him and shaking him and like over and over and over. And then that they touched his pee-pee.
>
> Q. Okay. And did they tell you anything else that had happened once they had touched his pee-pee?
>
> A. They told me that he had special pee come out.

---

[1] To protect the identities of the minor victims in this case, we use pseudonyms to refer to the girls and their mother. *See* N.C.R. App. P. 4(e).

Jan reported the girls' claims to their father and to the Jackson County Sheriff's Department ("JCSD"). Elizabeth and Ellen were examined at Mission Children's Hospital on 3 January 2013 by a team which included Cindy McJunkin, a registered nurse; Melissa Lillie, a licensed clinical social worker; and Dr. Cynthia Brown, who later testified as an expert in child abuse pediatrics.

Defendant was indicted on four counts of indecent liberties with a child, two stemming from the alleged events of 23 December 2012 and two based on the alleged incident on 24 December 2012. The jury acquitted Defendant of the 24 December charges and found him guilty of those which occurred on 23 December. The trial court sentenced Defendant to consecutive 21-35 month terms in prison but suspended the second term upon service of 36 months of supervised probation. Defendant gave notice of appeal in open court.

*Discussion*

Defendant argues that the trial court erred in (1) allowing Dr. Brown to vouch for the credibility of Ellen's and Elizabeth's disclosures and (2) admitting as substantive evidence hearsay statements the girls allegedly made to their

mother, as well as Jan's written statement to the JCSD which contained additional hearsay statements.  We find no error.

*I. Vouching by Dr. Brown*

Defendant first argues that the trial court improperly allowed Dr. Brown to vouch for the credibility of Ellen's and Elizabeth's disclosures.  We disagree.

Specifically, Defendant contends that the following three statements by Dr. Brown constituted improper vouching:  that Elizabeth (1) "certainly demonstrated knowledge of sexual acts beyond her developmental level" and that Ellen (2) "falls into the category of a child who is very much struggling with talking about what happened[,]" and eventually (3) "did talk around it and at the end acknowledged that some rules were broken and that [Defendant] lied about it and that it was true.  But she wasn't able to articulate the way her sister did what happened."  Defendant objected to each of these statements at trial, and, on appeal, asserts that this "testimony amounted to an impermissible opinion regarding Ellen['s] and Elizabeth's credibility and a tacit statement that Ellen and Elizabeth were sexually abused by [Defendant]."

*A. Standards of review*

We first note that, at trial, Defendant objected to Dr. Brown's statement about Elizabeth's knowledge on what appears to be hearsay grounds, not as an impermissible comment on the girl's credibility. Defendant's trial counsel stated, "Objection to what she would not have knowledge of." Our Rules of Appellate Procedure provide that, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, *stating the specific grounds for the ruling the party desired the court* to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1). Where a defendant objects to the admission of evidence on one basis in the trial court, he may not argue that the admission of the evidence was erroneous on another basis on appeal. *See, e.g.*, *State v. Tellez*, 200 N.C. App. 517, 521, 684 S.E.2d 733, 736 (2009) ("It is well-established that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." (citations and internal quotation marks omitted)). In such cases, a defendant is limited to plain error review. N.C.R. App. P. 10(a)(4). Further, where

> an [evidentiary] issue is not preserved in a criminal case, we apply plain error review.

> We find plain error only in exceptional
> cases where, after reviewing the entire
> record, it can be said the claimed error is
> a *fundamental* error, something so basic, so
> prejudicial, so lacking in its elements that
> justice cannot have been done. Thus, the
> appellate court must study the whole record
> to determine if the error had such an impact
> on the guilt determination, therefore
> constituting plain error. Accordingly, we
> must determine whether the jury would
> probably have reached a different verdict if
> this testimony had not been admitted.

*State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006)

(citations and internal quotation marks omitted; emphasis in

original).

Defendant did object to Dr. Brown's testimony about Ellen

as improper vouching, and we consider that question *de novo*.

*See State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598,

*affirmed*, 356 N.C. 428, 571 S.E.2d 584 (2002). If we determine

that the testimony was vouching and thus erroneously admitted,

we must next consider whether it was prejudicial to Defendant.

*Id.* at 53, 637 S.E.2d at 599.

> Error is prejudicial when there is a
> reasonable possibility that, had the error
> in question not been committed, a different
> result would have been reached at the trial
> out of which the appeal arises. The burden
> is upon the defendant to show prejudice.
> This Court has held that it is fundamental
> to a fair trial that a witness's credibility
> be determined by a jury, that expert opinion
> on the credibility of a witness is

> inadmissible, and that the admission of such testimony is prejudicial when the State's case depends largely on the testimony of the prosecuting witness.

*Id.* (citations and internal quotation marks omitted). In sum, to prevail on his arguments regarding any of the challenged testimony by Dr. Brown, Defendant must show that its admission was both erroneous and likely altered the outcome of his trial.

*B. Analysis*

> It is well settled that expert opinion testimony is not admissible to establish the credibility of the victim as a witness. However, those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant must be distinguished from cases in which the expert's testimony relates to a diagnosis based on the expert's examination of the witness. With respect to expert testimony in child sexual abuse prosecutions, our Supreme Court has approved, upon a proper foundation, the admission of expert testimony with respect to the characteristics of sexually abused children and whether the particular complainant has symptoms consistent with those characteristics.

> In order for an expert medical witness to render an opinion that a child has, in fact, been sexually abused, the State must establish a proper foundation, . . . physical evidence consistent with sexual abuse. Without physical evidence, expert testimony that sexual abuse has occurred is an impermissible opinion regarding the victim's credibility.

*State v. Frady*, __ N.C. App. __, __, 747 S.E.2d 164, 167 (citations, internal quotations marks, and brackets omitted), *disc. review denied*, 367 N.C. 273, 752 S.E.2d 465 (2013). However, "[t]he fact that this evidence may support the credibility of the victim does not alone render it inadmissible." *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987).

Defendant urges that Dr. Brown's "testimony in *Frady* was identical to her testimony in this case." We disagree. Dr. Brown also testified as an expert in child sexual abuse in *Frady*, where she

> stated that [the victim]'s "disclosure" was "consistent with sexual abuse." The alleged "disclosure" was [the victim]'s description of the abuse. . . . While Dr. Brown did not diagnose [the victim] as having been sexually abused, she essentially expressed her opinion that [the victim] is credible. We see no appreciable difference between this statement and a statement that [the victim] is believable. *The testimony neither addressed the characteristics of sexually abused children nor spoke to whether [the victim] exhibited symptoms consistent with those characteristics.*

*Frady*, __ N.C. App. at __, 747 S.E.2d at 167 (citation omitted; emphasis added). Accordingly, we held that the admission of Dr. Brown's testimony was error. *Id.*

Here, in contrast, Dr. Brown did *not* testify that either of the girls' "disclosures" or *descriptions of what occurred* were consistent with sexual abuse. Rather, she testified about "the characteristics of sexually abused children [and] spoke to whether [Elizabeth and Ellen] exhibited symptoms consistent with those characteristics." *See id.* The following exchange occurred during Dr. Brown's direct examination:

> Q. Now, have you observed in your practice common characteristics in children that have been sexually abused?
>
> A. Yes.
>
> Q. And have you read and researched and had studies in children who are sexually abused?
>
> A. Yes.
>
> Q. Now, ha[ve] your research and studies regarding sexual abuse provided characteristics that are exhibited by children who have claims of sexual abuse?
>
> A. Yes.
>
> Q. And what types of claims are commonly made?
>
> A. So going, again, to how they tell when they do decide to tell, and this is – I'm going to go back to another study where they looked at children who they knew had been sexually abused because the perpetrator made videotapes, so on the videotapes they could see a number of sex acts that were performed on the child. And when they compared what

they knew had happened on the videotape to what the child actually told, what they found is that most of the children only told a little bit about what happened and did not tell every single act that had occurred to them. So, again, that highlights *it's a very difficult thing for them to tell, and many times they only tell little bits of it in the beginning. A sexually abused child may have other behaviors that are of concern.* They may have sleeping problems. They may regress in some other developmental things like children who are toilet trained may regress and have accidents. They may be more fearful and clingy and won't sleep alone. Some children will exhibit sexualized behaviors where they will act out on peers and mimic sexual acts they have experienced and, again, *demonstrating knowledge that they shouldn't have at that age* that tells us that something has happened to them.

Q. *Do you have an opinion based upon your knowledge, experience, training and in your professional capacity as to whether [Elizabeth] exhibited characteristics of sexually abused children?*

A. Yes.

Q. And what is that opinion?

A. *That she demonstrated, in our evaluation, characteristics that were consistent with a child who had been sexually abused.*

Q. And what are some of those characteristics?

A. She had problems sleeping, was clingy, very emotional. After the — after she started talking about what happened and had

to experience — and she certainly demonstrated knowledge of sexual acts beyond her developmental level and was able to demonstrate that during her interview. She certainly had knowledge of what was ejaculate, which was not something that she would have knowledge of.

[DEFENSE COUNSEL]: Objection to what she would not have knowledge of.

THE COURT: Objection overruled.

BY [THE STATE]:

Q. And how would you compare her ability to disclose as opposed to [Ellen]'s ability to talk?

A. *So [Ellen], I think, falls into the category of a child who is very much struggling with talking about what happened.*

[DEFENSE COUNSEL]: Objection; opinion on credibility as to what happened.

THE COURT: Overruled.

[A.] She *did talk around it and at the end acknowledged that some rules were broken and that [Defendant] lied about it and that it was true. But she wasn't able to articulate the way her sister did what happened.*

(Emphasis added). Dr. Brown first (1) identified numerous characteristics of sexually-abused children, including having difficulty talking about what happened in complete detail and "demonstrating knowledge that they shouldn't have at that age" and then (2) opined that both girls exhibited certain of those

characteristics. This type of testimony is permitted under our case law and does not constitute vouching for the credibility of the victim. In other words, Dr. Brown did *not* testify that the girls' *descriptions* of what occurred were consistent with their having been abused, which would "essentially [be an expression of] her opinion that [Elizabeth and Ellen are] credible." *See id.* Instead, she testified about the *behaviors and characteristics* of sexually-abused children and identified specific *behaviors and characteristics* of Elizabeth and Ellen which were consistent therewith, to wit, that Elizabeth "certainly demonstrated knowledge of sexual acts beyond her developmental level" and that Ellen "falls into the category of a child who is very much struggling with talking about what happened[,]" but "did talk around it and at the end acknowledged that some rules were broken and that [Defendant] lied about it and that it was true." Because the testimony was properly admitted, we need not consider its prejudicial impact. This argument is overruled.

*II. Hearsay statements*

Defendant next argues that the trial court erred in admitting as substantive evidence hearsay statements the girls allegedly made to their mother, as well as Jan's written

statement to the JCSD which contained additional hearsay statements. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2013). In general, hearsay is not admissible. N.C. Gen. Stat. § 8C-1, Rule 802. However, our Rules of Evidence contain numerous exceptions to this general rule by which hearsay may be properly admitted at trial.

Specifically, Defendant challenges the admission of the following portions of Jan's testimony on direct examination:

> Q.  Okay.  On Christmas Eve of last year, did one of the girls say something to you that took you by surprise?
>
> A.  Yeah.
>
> Q.  What — what did [she] say?
>
> [DEFENSE COUNSEL]:  Objection for the truth of the matter asserted, your Honor.
>
> THE COURT:  Overruled.  Go ahead.
>
> BY [THE STATE]:
>
> Q.  And what did they tell you or which daughter talked to you?
>
> A.  [Ellen] told me that they had taken a shower with [Defendant] that morning.
>
> . . . .

Q.    Okay.  So after you got off the phone, did you talk with the girls anymore or what did you do?

A.    Yeah.  I asked them if they were sure and they told me yes.

[DEFENSE COUNSEL]:  Objection; hearsay, move to strike.

THE COURT:  Overruled.

Q.    Repeat what you said.

A.    I just asked them if they was [sic] sure that it happened.

Q.    And what did they say?

A.    Yes.

Q.    And did they tell you something else after talking to you about the shower?

[DEFENSE COUNSEL]:  Objection; hearsay.

THE COURT:  Overruled.

[A.] Yes.

BY [THE STATE]:

Q.    What else?

A.    On the ride home they did.

Q.    Okay.  What did they tell you on the ride home?

A.    That [Defendant] had got out [of] the shower the night before and was laying on the bed, and [Ellen] kept shaking him and

shaking him and like over and over and over. And then that they touched his pee-pee.

Q. Okay. And did they tell you anything else that had happened once they had touched his pee-pee?

A. They told me that he had special pee come out.

[DEFENSE COUNSEL]: Move to strike. Hearsay.

THE COURT: Overruled.

In addition, Defendant contends that Jan's statement to the JCSD given 25 December 2012 was hearsay and thus improperly admitted over his hearsay objection:

> At my mother's house, the girls, [Ellen] and [Elizabeth], told me that they had taken a shower with [Defendant] that morning while I was at work. Upon questioning them, they told me that the night before while I was asleep on the couch [Defendant] took a shower and laid down on the bed. They told me [Ellen] shaked [sic] him. He only had on boxers. Then they told me they touched his penis and his balls. When I asked why they touched it, [Ellen] didn't give an answer and [Elizabeth] said [Ellen] made her. And they also told me he had special pee come out onto his stomach.

We first observe that, although Defendant made several hearsay objections during the quoted portion of Jan's testimony, he did not object to her statement that the girls told her "[t]hat [Defendant] had got out [of] the shower the night before

and was laying on the bed, and [Ellen] kept shaking him and shaking him and like over and over and over. And then that they touched his pee-pee." Defendant urges that his objections constituted a "single objection to [a] line of questions." However, the transcript reveals that defense counsel never requested, and thus the trial court did not note, a standing or continuing objection to this line of questioning. *See, e.g.*, *State v. Goins*, __ N.C. App. __, __, 754 S.E.2d 195, 201 (2014) (quoting a defense counsel's request for and a trial court's noting of the defendant's standing objection to an entire line of questioning).

Having failed to object to this testimony at trial, Defendant is entitled only to argue plain error. *See State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012). However, Defendant does not specifically allege plain error in his brief. N.C.R. App. P. 10(a)(4) (stating that, in order to preserve an argument pursuant to plain error, the defendant must "specifically and distinctly contend[]" the challenged ruling amounted to plain error). Accordingly, Defendant's argument as to that portion of Jan's testimony is deemed abandoned. Further, where the substance of challenged evidence is admitted without objection either before or after the challenge is made,

a defendant loses the effect of his objection. *See State v. Collins*, 50 N.C. App. 155, 158, 272 S.E.2d 603, 605 (1980) (citation omitted). Thus, we do not consider Defendant's argument regarding the following portion of Jan's written statement which recounts the substance of her unchallenged testimony: "Upon questioning them, they told me that the night before while I was asleep on the couch [Defendant] took a shower and laid down on the bed. They told me [Ellen] shaked [sic] him. . . . Then they told me they touched his penis . . . ."

"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed *de novo*." *State v. Johnson*, __ N.C. App. __, __, 706 S.E.2d 790, 797 (2011) (citation omitted). However, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (citation omitted), *disc. review denied*, 354 N.C. 223, 554 S.E.2d 650 (2001).

Only two portions of Jan's testimony and her written statement were properly objected to as hearsay: (1) that Ellen reported the girls had taken a shower with Defendant on the morning of 24 December 2012 while Jan was at work and (2) that

on the previous night, 23 December 2012, "special pee came out" of Defendant's penis.[2] As noted *supra*, the jury acquitted Defendant of the 24 December charges. Defendant cannot demonstrate prejudice from the allegedly erroneous admission of evidence regarding the incident the girls reported to have occurred on 24 December 2012 as the jury apparently did not find such evidence credible. As for the girls' report that "special pee came out" of Defendant's penis on 23 December 2012, we do not believe "that absent the [admission of this evidence] a different result would have been reached at trial." *Id.* The indecent liberty Defendant was alleged to have taken with the girls was inducing them to touch his penis. Whether Defendant ejaculated after this touching was not relevant to the issues before the jury, and therefore, Defendant cannot establish that the allegedly erroneous admission of Jan's testimony prejudiced him.

Further, videotapes of Ellen's and Elizabeth's interviews with Mission Children's Hospital staff members were played for the jury over Defendant's objections.[3] In Ellen's interview, she

---

[2] The State's theory at trial was that this was a reference to Defendant ejaculating.

[3] On appeal, Defendant does not challenge the trial court's overruling of these objections.

described, *inter alia*, showering with Defendant and Elizabeth, Defendant laying down on a bed naked, and Defendant making her do something she did not want to do. In her interview, Elizabeth described Ellen laying on a bed with Defendant, who was naked; touching Defendant's penis at his request; and Defendant "peeing . . . gray pee" and moaning. Elizabeth also reported that Ellen had taken a shower with Defendant. In light of this additional evidence that Defendant showered with the girls and persuaded Ellen to touch his penis until he ejaculated, we do not believe that any of the allegedly inadmissible hearsay evidence altered the outcome of Defendant's trial. *See id.* Accordingly, this argument is overruled.

NO ERROR in part; NO PREJUDICIAL ERROR in part.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).