IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-68

No. 376A19

Filed 11 June 2021

STATE OF NORTH CAROLINA

v.

ERVAN L. BETTS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 267 N.C. App. 272 (2019), finding no plain error after appeal from a judgment entered on 23 March 2018 by Judge R. Stuart Albright in Superior Court, Forsyth County. On 28 February 2020, the Supreme Court allowed defendant's petition for discretionary review to review an additional issue not addressed by the Court of Appeals. Heard in the Supreme Court on 22 March 2021.

*Joshua H. Stein, Attorney General, by Anne M. Middleton, Special Deputy Attorney General, and Heyward Earnhardt, Solicitor General Fellow, for the State-appellee.*

*Craig M. Cooley for defendant-appellant.*

BARRINGER, Justice.

¶ 1    Defendant was convicted of three counts of indecent liberties with a child. Defendant appealed to the Court of Appeals, which in a divided opinion held that defendant had a trial free from prejudicial error. After careful review, we modify and affirm the decision of the Court of Appeals.

## I.  Background

¶ 2    When B.C. [1] was born in 2013, illegal drugs were found in her system, which prompted the involvement of the Forsyth County Department of Social Services (DSS). On 25 October 2013, DSS conducted an interview of M.C., the seven-year-old sister of B.C., and M.C. informed the social worker, Melodie Archie, that defendant touched her inappropriately. During this time, defendant was in a relationship with M.C. and B.C.'s mother. When the social worker asked additional questions, M.C. denied being touched inappropriately but then described domestic violence incidents between defendant and her mother.

¶ 3    Archie testified on behalf of the State that she conducted a follow-up interview at M.C.'s elementary school where M.C. described incidents of defendant inappropriately touching her. Archie referred M.C. to an advocacy center and contacted the Winston-Salem Police Department. M.C. went to the child advocacy center in November 2013, where she underwent a forensic interview conducted by Fulton McSwain.

¶ 4    McSwain wrote a report that was admitted into evidence showing that during the forensic interview at the advocacy center, M.C. described incidents of domestic violence between defendant and her mother, two specific incidents of defendant

---

[1] Initials are used to protect the identities of B.C. and M.C., minor children, who are involved in the case.

inappropriately touching her, and one incident where defendant slapped her on the leg so hard that he left a hand imprint and then said to her, "F**k you b**ch." M.C. also relayed specific incidents of domestic violence she witnessed between her mother and defendant, which included defendant pushing her mother into a counter and a closet, defendant punching her mother and causing her to have a black eye, and defendant bringing a gun to her mother's residence and attempting to break into her mother's apartment.

¶ 5     While M.C. only described in detail two specific incidents of inappropriate touching by defendant, M.C. explained that defendant kept on touching her private parts over and over again, but she could not remember how many times defendant had inappropriately touched her. The two specific incidents of inappropriate touching that M.C. described were defendant rubbing M.C.'s vagina beneath her underwear and defendant touching M.C.'s breasts. At the conclusion of the interview, the interviewer documented that M.C. "reported to being truthful and did not appear to display any overt signs of deception."

¶ 6     In December 2013, M.C. began seeing Mary Katherine Mazzola,[2] a licensed clinical social worker with DSS, who worked as a therapist in the clinical services unit. Mazzola testified at trial that M.C. was referred to her based on M.C.'s exposure

---

[2] While there are discrepancies in how Mazzola's name is spelled, we will use the spelling of her name as documented in the Court of Appeals opinion.

to neglect, sexual abuse, and violence and, after a trauma assessment, Mazzola diagnosed M.C. with post-traumatic stress disorder (PTSD).

¶ 7 On 25 April 2016, defendant was indicted on three counts of indecent liberties with a child. At trial, the State called to testify, among others, M.C., Archie, McSwain, and Mazzola. Mazzola was qualified as an expert witness in sexual abuse and pediatric counseling. The defendant was subsequently convicted of all three counts and sentenced to three consecutive terms of 31 to 47 months imprisonment.

¶ 8 Defendant appealed. The Court of Appeals addressed defendant's arguments that the trial court committed plain error by "(1) not issuing a limiting instruction regarding 'profile' testimony; (2) allowing testimony and reports that amounted to improper vouching for the credibility of the victim; (3) incorrectly instructing the jury on the proper use of testimony related to the victim's PTSD; and (4) admitting evidence of prior incidents of domestic violence by defendant." *State v. Betts,* 267 N.C. App. 272, 274 (2019). In a divided opinion, the Court of Appeals held that defendant received a fair trial free from prejudicial error. *Id.* at 286.

¶ 9 The dissent, however, argued that the consistent use of the term "disclose" by the State's witnesses was impermissible vouching as to M.C.'s credibility, that the introduction of the domestic violence evidence was error, and the cumulative effect of these errors required reversal of defendant's convictions. *Id.* at 297, 309−310 (Tyson, J., dissenting). Defendant appealed as of right to this Court based on the dissenting

opinion from the Court of Appeals. The Court of Appeals opinion did not directly address defendant's issue on appeal of whether separate elements of Mazzola's testimony constituted impermissible vouching of M.C.'s credibility, and this Court allowed defendant's petition for discretionary review as to that issue.

## II. Standard of Review

If in a criminal case, an issue was not preserved by objection at trial and was not deemed preserved by rule or law, the unpreserved error is reviewed only for plain error. *See* N.C. R. App. P. 10(a)(4) (2021).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518 (2012) (cleaned up).

## III. Analysis

### A. Impermissible Vouching

Aside from its consideration of the term "disclose," the Court of Appeals did not directly address defendant's specific challenges to part of Mazzola's testimony as impermissible vouching as to M.C.'s credibility. We address the issue here and accordingly modify the Court of Appeals' majority opinion.

¶ 12            Defendant did not object to this evidence when it was offered at trial and, thus, we review for plain error. Defendant argues that Mazzola's answers in the affirmative to a series of questions from the State constituted impermissible vouching as to M.C.'s credibility and the trial court's failure to strike her testimony was plain error. Specifically, the State asked and Mazzola answered in the affirmative the following questions: (1) "when you make a diagnosis of post-traumatic stress disorder, are there several types of traumatic events that could lead to that diagnosis?," (2) "would violence in the home be one of those?," (3) "what about domestic violence or witnessing domestic violence?," (4) "what about sexual abuse?," (5) "[w]ould it be fair to say that [M.C.] had experienced a number of traumas?," and (6) "And that was the basis of your therapy?"

¶ 13            Expert opinion is not admissible to vouch for a victim's credibility; nonetheless, "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil,* 355 N.C. 266, 266−267 (2002) (per curiam). An expert's opinion that sexual abuse did in fact occur is admissible when there is physical evidence supporting a diagnosis of sexual abuse. *Id.* at 266.

¶ 14            Given the context of the testimony and the questions asked, Mazzola's testimony did not vouch for M.C.'s credibility and thus was admissible testimony. As argued by the State, the challenged testimony addressed what types of trauma could

lead to a PTSD diagnosis—and never indicated which traumas M.C. experienced, if any.

¶ 15     This Court has held that "testimony amount[ing] to an expert's opinion as to the credibility of the victim . . . is inadmissible under the mandate of Rule 608(a) [of the North Carolina Rules of Evidence.]" *State v. Aguallo,* 318 N.C. 590, 599 (1986). An identification of trauma which may form the basis of a PTSD diagnosis clearly, as recited by Mazzola, does not constitute a vouching for the victim's credibility, but rather a statement of the considerations that led to the expert's diagnosis. Accordingly, Mazzola's testimony does not address credibility. Mazzola's affirmative answer to the question concerning whether M.C. had experienced a number of traumas was in response to the State's line of questioning regarding Mazzola's diagnosis of PTSD.

¶ 16     Mazzola did not "usurp the jury's function in determining credibility" as defendant claims. Mazzola never testified that M.C. was in fact sexually abused. *Cf. State v. Towe,* 366 N.C. 56, 59–60 (2012) (concluding that expert testimony was improper where the expert testified that the complainant was in fact part of a category of sexual abuse victims that displayed no physical abnormalities). Mazzola's testimony stayed within the bounds of permissible expert witness testimony in child sex abuse cases.

¶ 17      Even if Mazzola's testimony was admitted in error, the testimony was not prejudicial to defendant. The trial court gave instructions to the jury on two occasions stating that Mazzola's testimony could only be used for two purposes: to corroborate M.C.'s testimony or to explain M.C.'s delay in reporting defendant's crimes. While defendant argues that M.C.'s testimony of the incidents contains several inconsistencies, defendant had the opportunity to present evidence and cross-examine M.C. to highlight any alleged inconsistencies. In fact, defendant's trial counsel did call attention to M.C.'s inconsistencies to the jury during closing arguments. Based on the evidence presented at trial, the burden of showing prejudice for an unpreserved error—that "the error had a probable impact on the jury's finding that the defendant was guilty"—is upon the defendant. *See Lawrence*, 365 N.C. at 518. Defendant has not met his burden of showing plain error.

**B. Use of the Word "Disclose" as Impermissible Vouching**

¶ 18      Defendant next argues that the use of the word "disclose" throughout the State's expert and lay witnesses' testimony constituted impermissible vouching as to M.C.'s credibility. Defendant did not object to this evidence when it was offered at trial and, thus, we review for plain error.

¶ 19      An expert's opinion that a complainant has endured sexual abuse, absent physical evidence, is impermissible vouching as to the complainant's credibility. *Stancil*, 355 N.C. at 266−267. This Court "has found reversible error when experts

have testified that the victim was believable, had no record of lying, and had never been untruthful." *State v. Aguallo,* 322 N.C. 818, 822 (1988).

Defendant relies on the unpublished Court of Appeals opinion *State v. Jamison*, COA18-292, 2018 WL 6318321 (N.C. Ct. App. Dec. 4, 2018),[3] which is based on *State v. Frady*, 228 N.C. App. 682, *review denied*, 367 N.C. 273 (2013), to argue that the State's witnesses' use of the word "disclose" constituted impermissible vouching. Defendant not only relies on an unpublished Court of Appeals decision to support his argument, but the holding in *Frady* does not support defendant's position.[4] An expert witness's use of the word "disclose," standing alone, does not constitute impermissible vouching as to the credibility of a victim of child sex abuse, regardless of how frequently used, and indicates nothing more than that a particular statement was made. Thus, we conclude that the trial court did not err by allowing the State's witnesses to use the term "disclose" and there is no plain error.

Even if it were error for the trial court to admit testimony of the State's witnesses who used the term "disclose," defendant has not shown plain error. M.C. testified about three incidents of defendant inappropriately touching her, where she

---

[3] We note that it is highly disfavored to cite to unpublished opinions. *See* N.C. R. App. P. 30(e)(3) (2021).

[4] In *State v. Frady*, the Court of Appeals assessed the testimony of the expert and evaluated whether the meaning of the testimony would be construed by the jury as an opinion by the expert of the victim's credibility. *Frady*, 228 N.C. App. at 685−86. *Frady* did not hold that the use of the word "disclose," by itself, conveys an opinion as to the credibility of a victim.

gave several details and described the surrounding circumstances. While M.C.'s account of the events may have had inconsistencies, the jury had the opportunity to watch M.C. testify and make an independent determination as to her credibility. Furthermore, substantial evidence was presented to the jury to find that defendant had inappropriately touched M.C. The State submitted for the jury's consideration McSwain's report of the forensic interview, a video of the forensic interview, as well as testimony from Archie and Mazzola. Defendant has not shown that the use of the word "disclose" had a probable impact on the jury's finding that he was guilty. *See Lawrence*, 365 N.C. at 518. Therefore, there is no prejudice.

**C. Domestic Violence Evidence**

¶ 22    Defendant next argues that the trial court plainly erred by allowing evidence of his past domestic violence incidents with M.C.'s mother in violation of North Carolina Rules of Evidence 401 and 403. We disagree.

¶ 23    Rule 401 states that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (2019). Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403.

¶ 24     Here, defendant argues that the evidence of domestic violence, which consisted of the three incidents M.C. described to McSwain during her forensic interview, "had little—if anything—to do with the charged offenses." Yet, the domestic violence evidence provides a justification for why M.C. was fearful of and delayed in reporting defendant's sexual abuse. In *State v. Espinoza-Valenzuela*, 203 N.C. App. 485 (2010), the Court of Appeals held that evidence of domestic violence between defendant and complainants' mother, although tending to show defendant's character, was relevant pursuant to N.C.G.S. § 8C-1, Rule 401 to show why complainants delayed reporting the sexual abuse defendant perpetrated against them. *Espinoza-Valenzuela*, 203 N.C. App. at 491. The same rationale can be applied in the instant case. The domestic violence evidence goes directly to crucial issues in the case including M.C.'s credibility, the veracity of her allegations, and why she did not reveal defendant's actions until DSS became involved with B.C., her younger sister.

¶ 25     The evidence of domestic violence was also probative of M.C.'s PTSD diagnosis. Mazzola testified to her opinion that M.C. has had "complex trauma" that ultimately led Mazzola to diagnosing M.C. with PTSD. Mazzola testified that domestic violence can contribute to a person developing PTSD. The domestic violence evidence, thus, aided the jury's understanding of M.C.'s PTSD diagnosis. Since the domestic violence

evidence was relevant to explain why M.C. delayed reporting defendant's sexual assaults and the domestic violence contributed to M.C.'s PTSD diagnosis, it follows that the evidence was relevant under Rule 401 and 403 as it pertained to M.C.'s PTSD and its effects on M.C. *See State v. Hall*, 330 N.C. 808, 822 (1992) ("[T]estimony on post-traumatic stress syndrome may assist in corroborating the victim's story, or it may help to explain delays in reporting the crime or to refute the defense of consent.").

The domestic violence evidence was relevant pursuant to Rule 401 to offer an explanation as to why M.C. delayed reporting defendant's crimes and aided the jury's understanding of M.C.'s PTSD diagnosis. The domestic violence evidence was not more prejudicial than probative so as to be excluded under Rule 403 because it went directly to an issue in the case—M.C.'s credibility. Therefore, we conclude that the trial court did not err by admitting evidence of defendant's past incidents of domestic violence, and thus, there cannot be plain error.

## D. Cumulative Error

Finally, defendant argues that the cumulative effect of the trial court's errors prejudiced him. Since we hold that none of the issues present error, we decline to consider defendant's cumulative error argument. *See State v. Thompson*, 359 N.C. 77, 106 (2004) (stating that because the Court concluded there was no error on two of defendant's assignments of error, defendant's cumulative error argument did not need to be considered).

## IV.    Conclusion

Defendant received a fair trial, free from prejudicial error. Neither Mazzola's testimony, which was not fully addressed by the Court of Appeals, nor the use of the word "disclose" throughout the State's witnesses' testimony constituted impermissible vouching as to M.C.'s credibility. Furthermore, the domestic violence evidence was relevant to explain why M.C. delayed reporting defendant's crimes and aided the jury's understanding of M.C.'s PTSD diagnosis. Since we conclude that the trial court did not commit error, there was no cumulative error. Accordingly, we modify and affirm the Court of Appeals decision.

MODIFIED AND AFFIRMED.

Justice BERGER did not participate in the consideration or decision of this case.